[L. A. No. 13174. In Bank.—December 30, 1933.]

O. P. LUSE, Appellant, v. CHARLES W. PETERS et al., Respondents.

Albert Sidney Brown for Appellant.

Leonard Evans for Respondents.

SEAWELL, J.—Plaintiff appeals from two judgments entered in favor of defendants in an action brought by plaintiff to recover the sum of $5,041.64. By a judgment rendered on March 30, 1931, the court adjudged that defendants recover from plaintiff the sum of $6,000 upon a pleading which the court held to constitute a cross-complaint, and upon which defendants had procured the default of plaintiff to be entered for failure to answer. By a judgment rendered on

April 4, 1931, said court decreed that plaintiff take nothing upon his complaint. Plaintiff also appeals from the order of said court denying his motion after judgment to vacate and set aside said default, and from an order denying his motion for a new trial. ■ No appeal lies from an order denying a new trial, and the attempted appeal therefrom is dismissed.

Respondents have failed to file a brief on this appeal. They filed a two-page reply to a Supplemental Observation filed by plaintiff, but this reply does not aid our consideration of the questions on this appeal.

It appeared upon the trial that plaintiff, O. P. Luse, manufactured a poultry food and remedy to which he had given the name "Luseaux". On January 19, 1927, he entered into an agreement with defendants Charles W. Peters and John W. Campbell, by the terms of which said defendants were to purchase said product from him, and to have the exclusive right to sell and distribute it in the state of California for twenty-five years. On December 15, 1927, they had become indebted to plaintiff in the sum of $7,737.91 for quantities of said product delivered to them for resale. On that date they assigned to plaintiff all existing accounts receivable from their customers in the sum of $5,300, and all accounts which might thereafter arise, as security for their existing and future indebtedness to plaintiff. On or about February 15, 1928, they ceased to market plaintiff's product. Plaintiff thereafter received collections on the accounts assigned to him. The sum of $5,041.64, prayed for in the complaint, is the balance claimed by plaintiff to be due him from defendants after crediting them with the payments received by him on the assigned accounts. At the time of trial plaintiff testified that said balance had been further reduced to $4,619.90 by payments received on the assigned accounts.

The complaint is in two counts, one on an open book account, and the other on an account stated. Defendants filed a single pleading denominated Answer and Cross-complaint. As a first defense they denied generally the allegations of the complaint. As a second defense they set forth the agreement of January 19, 1927, and the assignment of their accounts receivable to plaintiff, and alleged that plaintiff had refused to give them an accounting as to the amounts

collected thereon. "For a third defense to said complaint and by way of cross-complaint," they alleged that plaintiff made false and fraudulent statements concerning said product upon which they relied in entering into said contract, and that plaintiff had furnished them with untrue information for use in advertising and labeling; that they are informed that many of the persons whose accounts were assigned by them to plaintiff had refused payment on the ground that the advertising and labeling misrepresented the product, and that the federal authorities, acting under the Food and Drug Act, had ordered the label changed. By reason of said false statements and the expenditure by them of money and labor in the advertising, sale and distribution of said product, defendants claim to have suffered damages in the sum of $10,000, for which they pray. The court heard evidence offered by defendants upon these allegations set forth "by way of cross-complaint", upon which they had caused the clerk to enter the default of plaintiff five days before trial, and entered judgment thereon in favor of defendants for $6,000. Defendants testified that they had expended this amount in advertising.

When plaintiff sought to establish his case upon his complaint it developed that Mrs. Lokka, plaintiff's book-keeper, had brought to the courtroom an account book of original entry showing the transactions had prior to February 15, 1928. But she had listed on a separate paper, from the account book in which she had made the original entries, the payments received after February 15th on the assigned accounts, and she brought to court this paper, which she thought would be sufficient. The court sustained defendants' objection to the admission of said paper in evidence, and to plaintiff or Mrs. Lokka testifying by reference thereto, on the ground that it was not an account of original entry. (10 Cal. Jur. 911, and cases there cited; Jones on Evidence, 3d ed., pp. 884, 888.) Plaintiff asked for a continuance to enable him to bring the book of original entry into court, but the court denied this request. The missing account book was in plaintiff's office in Los Angeles, and he could have produced it in the courtroom in Santa Ana, Orange County, by 2 o'clock of the same afternoon. The court contemplated hearing evidence of defendants upon the pleading filed by them "by way of cross-complaint". We are of the view

that the court abused its discretion in refusing to continue this portion of plaintiff's case pending the taking of evidence on other points, in order to enable plaintiff to procure the original account book.

Plaintiff also sought to establish his case by relying on the account stated count of his complaint. He offered in evidence a statement of account made out by him at the request of defendants and at their direction sent to their attorney on August 9, 1929. He testified that defendants had never made any objection to said account. If an account be sent to the debtor and he does not object to it within a reasonable time, his acquiescence will be taken as an admission that the account is truly stated. (1 Cal. Jur. 197, and cases there cited.) At this point some discussion was had between the court and counsel as to whether the Luseaux Company, or defendants Peters and Campbell, the individuals composing it, had been adjudicated bankrupt, and thereupon the court refused to admit the statement of account in evidence.

Defendants' counsel stated that the bankruptcy matter was "mixed up". He first stated that he was under the impression that the federal court declined to adjudicate the bankruptcy of the partnership as a partnership, but immediately thereafter remarked that he thought only the firm was adjudicated bankrupt. The remarks of said attorney were not evidence. He did not even profess to have definite knowledge of the bankruptcy matter, but said that his remarks were only hearsay. Under the federal Bankruptcy Act a partnership is recognized as a distinct entity separate from the individuals composing it, and a partnership may be adjudged bankrupt irrespective of an adjudication of the individual partners, or the individual partners may be adjudged bankrupt independently of the firm. (U. S. C. A., title 11, sec. 23, with annotation, particularly at pp. 278–285, and 298; Collier on Bankruptcy, 1926 ed., 249.) If any liability in the case herein was affected by a discharge in bankruptcy, or by the pendency of bankruptcy proceedings, this was a matter of defense, to be alleged and established by defendants by competent evidence. The court should not have excluded the statement of account rendered by plaintiff by reason of said remarks of defendants' attorney. Defendants made no reference to bankruptcy proceedings in their plead-

ings. A discharge in bankruptcy is an affirmative defense which should be specially pleaded. (*Tuttle* v. *Scott*, 119 Cal. 586 [51 Pac. 849] ; *Security T. & Sav. Bank* v. *Carrier*, 107 Cal. App. 333 [290 Pac. 458] ; 4 Cal. Jur. 86.)

The judgment that plaintiff take nothing upon his complaint must be reversed because of the rulings of the trial court, which prevented plaintiff from proving his case by introducing in evidence the account stated, and establishing payments received upon the assigned accounts after the date of the account stated by reference to the original account book, which plaintiff could have produced within a few hours. Nor can the default judgment for $6,000 which the court rendered in favor of defendants on their so-called cross-complaint be sustained. ■ Upon the trial plaintiff contended that the matters which defendants averred "by way of cross-complaint" as a matter of law constituted a counterclaim, upon which his default should not have been entered. A counterclaim is part of a defendant's answer and is not required to be controverted. (*Hanson* v. *Brininstool*, 192 Cal. 773 [178 Pac. 520] ; sec. 462, Code Civ. Proc.) A cross-complaint is a pleading separate and apart from the answer, and is required to be complete and sufficient in itself. It cannot be aided by averments of the answer. ■ In the case herein the so-called cross-complaint is included in the answer "for a third defense and by way of cross-complaint". Reference must be had to the allegations of the other defenses to render the third defense intelligible. In the early case of *Shain* v. *Belvin*, 79 Cal. 262 [21 Pac. 747], matter claimed to constitute a cross-complaint was introduced thus: "And for a further and separate answer and defense to said action, defendant avers by way of cross-complaint." It was held that this matter was pleaded by way of defense, rather than cross-complaint. (See, also, to the same effect, *Coulthurst* v. *Coulthurst*, 58 Cal. 239; *Goldman* v. *Bashore*, 80 Cal. 146 [22 Pac. 82].)

Under the 1927 amendment to section 438 of the Code of Civil Procedure, the sole requisites of a counterclaim are that it "must tend to diminish or defeat the plaintiff's recovery, and must exist in favor of a defendant and against a plaintiff between whom a several judgment might be had in the action". Under this amendment it is not necessary that there be any connection between the cause of action set up

in the complaint and that which forms the basis of the counterclaim. (*Terry Trading Corp.* v. *Barsky,* 210 Cal. 428, at p. 435 [292 Pac. 474, 477].) The facts of the cited case are particularly germane to the case now before us. In that case plaintiff sued on a note given for services performed by virtue of a written contract. In the instant case the plaintiff sued for the price of goods sold under a written contract. There, as here, the defendants averred an assignment to plaintiff of accounts receivable and prayed for an accounting. Defendants therein also prayed for damages for failure of the services performed by plaintiff to comply with the contract. In the instant case defendants seek damages because, they allege, the product sold to them was not as represented by plaintiff. In disposing of the appeal in *Terry Trading Corp.* v. *Barsky,* we held that obviously the claims for accounting and damages were the subject of counterclaim under the section as amended, and, further, that even prior to the amendment the matters alleged would have been a valid counterclaim not only "as a cause of action also arising upon contract" under subdivision 2 of section 438, but also a cause "arising out of the transaction set forth in the complaint", under subdivision 1 as it formerly read. The nature of the pleading will be determined from its allegations regardless of its designation. (*Terry Trading Corp.* v. *Barsky, supra,* at p. 434; *Cornblith* v. *Valentine,* 211 Cal. 243 [294 Pac. 1065].) "The facts surrounding the cause of action and not the form of the complaint are determinative of what constitutes the transaction." (*California Trust Co.* v. *Cohn,* 214 Cal. 619, 625 [7 Pac. (2d) 297]; *Terry Trading Corp.* v. *Barsky, supra,* at p. 436; *Martin* v. *Hall, ante,* p. 334 [26 Pac. (2d) 288].) It follows that the court erred in entering judgment against plaintiff by default for $6,000.

The judgment and the order denying motion to vacate are reversed.

Preston, J., Langdon, J., Curtis, J., and Thompson, J., concurred.