**TATUM et al. v. ACADIAN PRODUCTION CORPORATION OF LOUISIANA.**

No. 6223.

District Court, E. D. Louisiana, New Orleans Division.

Sept. 28, 1940.

Joseph M. Bowab, of New Orleans, La., for plaintiffs.

Haywood H. Hillyer, Jr., and John R. Land, Jr., both of New Orleans, La., for defendant.

44

**CAILLOUET, District Judge.**

This matter is before the Court on the motions of Acadian Production Corporation of Louisiana:

1. To dismiss the action because, so mover contends,

(a) There is failure to state a claim upon which relief can be granted;

(b) The claims alleged by the petitioners for mover's involuntary bankruptcy can not be made the basis for such involuntary proceedings;

(c) The Court is without jurisdiction of the subject-matter, inasmuch as there is pending in the United States District Court of the Western District of Louisiana, a certain action seeking the appointment of a receiver to administer a mineral lease, in connection wherewith arose the claims of the four complaining creditors herein, and because the amount actually in controversy is less than $500.00, exclusive of interest and costs.

2. To have said complaining creditors aver with definiteness or particularity the various and sundry matters referred to in said motion under captions (4) a. b. c. d. e. f. g. h. i. j. k., and to require said complaining creditors to produce and attach to their petition, certified copies, respectively, of the several written instruments referred to in said captions (4) i. j. k. and *l.*

3. To have stricken from the complaining creditors' petition, as impertinent, irrelevant and immaterial, each and every allegation contained in Articles 4, 6, 8, 9, 10 and 12 thereof.

Subsequent to the filing of the said motions, the complaining creditors, by leave of the Court, twice amended their original petition. The first time, it was simply to delete, in article or paragraph VI, the words "are informed, believe, and therefore, in good faith", so as to make the opening paragraph read, "That petitioners aver that the said Acadian Production Corporation of Louisiana, etc.", instead of "That petitioners are informed, believe and therefore, in good faith aver, etc."

The second time, it was for the purpose of adding to article or paragraph I the following sentence: "That said Acadian Production Corporation of Louisiana is organized under the laws of the State of Louisiana and is presently principally engaged in the production and development of oil, gas and mineral leases, and/or in the pur-chase, sale or hypothecation in any manner of oil, gas or mineral leases".

By stipulation filed in the record subsequent to the hearing had of said motions, both of said amended pleadings, which had not been served upon the mover at the time of the Court hearing, are now to be considered and disposed of and by authority of said stipulation there has been filed and included in the record, two offerings by the complaining creditors, marked "Plaintiff 1" and "Plaintiff 2"; it being further stipulated that these exhibits are to be viewed by the Court as if they had actually been offered in evidence on the trial of the motions, but there is reserved to the mover any and all rights which it may have under the aforementioned motion to strike, as well as the right to object to the introduction of the said documents in evidence if and when the cause comes to trial on the merits, and to then and there adduce all competent evidence relating to the circumstances surrounding the execution and delivery of the said two mentioned instruments.

The General Order in Bankruptcy No. 37, 11 U.S.C.A. following section 53, 59 S.Ct. clxxxiv, provides that the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, so far as they are not inconsistent with the Bankruptcy Act or with the General Orders of January 16, 1939, shall be followed "as nearly as may be", etc., and the motion for a bill of particulars and the motion to strike are warranted, it may be assumed as mover's counsel contend, under Rule 12 (e) and (f). So were the two permitted amendments of the petition, under Rule 15.

Mover's counsel submit that under (a) and (b) of the motion to dismiss, the grounds for dismissal are:

1. A partnership exists between the mover, Acadian Production Corporation of Louisiana, and Iberia Petroleum, and the petitioning creditors' claims are the debts of *that* partnership.

2. Said asserted partnership is an ordinary or limited partnership.

3. Acadian Production Corporation of Louisiana is a limited partner, and there is no "general" partner in the claimed partnership.

4. Because there is no "general" partner, the Court in this case has no authority to adjudge in bankruptcy under Section 5, Subdivision a, 11 U.S.C.A. § 23, sub. a, nor

has it authority to adjudge bankrupt the Acadian Production Corporation of Louisiana as a "limited" partner, until and unless the claimed "limited" partnership be first so adjudged.

The term "partnership" is no more specifically defined by the Bankruptcy Act of 1938 than it was by the Act of 1898, and, as a general rule, reference must be had to state laws and judicial decisions on partnership law, in any given case, to determine the question whether a partnership exists or not. It may, however, be observed, in passing, that under the 1898 Act it was held, by all cases on the particular point, that in order to adjudicate as bankrupt a claimed partnership, an "actual" one, and not one by estoppel, had to be shown, although no formal partnership agreement was required. The mere "holding out" of another as a partner was not, of itself, sufficient to bring the alleged partnership within the operating orbit of the Act, and there seems to be no reason why the same legal situation should not continue to exist under the Act of 1938. Collier on Bankruptcy, 14th Ed. 1940, Vol. 1, #502, pp. 689–691.

Mover's counsel contend that under the law and the jurisprudence of Louisiana, a partnership exists between the two corporations, the Acadian Production Corporation of Louisiana, and the Iberia Petroleum Corporation, but, in my view of the matter, this contention is not well-founded.

The contract of January 22, 1940, by and between Acadian Production Corporation of Louisiana and Iberia Petroleum Corporation (which was only recorded on February 13, 1940), does not conclusively show the existence of the claimed partnership between the two corporations, as mover's counsel argue in their brief.

Even admitting that a partnership was *legally* possible, such contract does, on the contrary, establish that if a partnership was intended by the parties contractant, such partnership was not to come into being until the consideration of sale was first paid by the Acadian Production Corporation of Louisiana, as purchaser from the Iberia Petroleum Corporation of the 68¾% of the latter corporation's ⅞ths right and title in and to a certain oil, gas and mineral lease. That consideration was:

(1) The assumption by such purchaser, of all the lessee obligations contained in the said oil, gas and mineral lease, and

(2) The drilling of two test wells on the leased premises, at the sole cost and expense of Acadian Production Corporation, assignee, as aforesaid.

As a matter of fact, so far as the record made up on the trial of the motions established, the entire payment and discharge of the consideration of sale has not yet been effected.

If a partnership legally resulted from the contract of January 22, 1940, as mover contends, *then,* the petitioning creditors agree that such partnership was an ordinary one, under Louisiana law and jurisprudence.

The existence of true partnership relation between the two contracting corporations, however, was not legally possible. According to the great weight of authority a corporation has no implied power to form a partnership with an *individual;* nevertheless, if the formation of such a partnership is actually attempted and the partnership contract is fully executed, the *individual* can not set up the legal invalidity of such contract. J. P. Barnett Co., Inc., v. Ludeau, 1930, 171 La. 21, 129 So. 655.

In 1901, in the case of L. J. Mestier & Co., v. A. Chevalier Paving Co., Ltd., 108 La. 562, 32 So. 520, where the plaintiff claimed that there was a partnership between itself and the defendant, quoad the particular venture in which the plaintiff *firm* and the defendant *corporation* were engaged, the Supreme Court (La.) definitely held that the defendant corporation could not be a member of a partnership although it could bind itself to the extent of dividing profits.

Finally, in the case of Sabine Supply Co. v. Cameron Oil Co., 1932, 175 La. 360, 143 So. 327, the Supreme Court (La.) expressed doubt that (at least as to two corporations therein mentioned) there was implied legal authority for the membership of a corporation in a partnership.

If, however, it were legally possible to here have a partnership existent between the two corporations, Acadian Production Corporation of Louisiana and Iberville Petroleum Corporation, such partnership, whilst it might, admittedly, be an ordinary partnership under Article 2826 of the Revised Civil Code of Louisiana, certainly could not be the "limited" partnership that mover's counsel contend for. A partnership must contain "general" partners, or at least one such; it may be the commercial partnership described under Article 2825 of the Louisiana Code, or the ordinary. To

such an existent partnership—whether commercial or ordinary—there may legally become attached or incorporated a "special" or "limited" partnership; but there can be no "limited" partner, unless there actually exists a partnership, and no partnership can exist unless there be at least one "general" partner.

■ Mover's counsel are in error when they assume that the term "limited partnership" contained in Sections 23, sub. a and 23, sub. k, Title 11, U.S.C.A., is synonymous with that of "ordinary partnership" which is found in Louisiana's Revised Civil Code. "Ordinary" partnerships, the Code provides, include all such as are not "commercial", and they are divided into universal and particular partnerships. Commercial partnerships are of two kinds—general and special. Art. 2827, R.C.C.

■ Now, there is also a species of partnership which may be received into and incorporated in either the ordinary or the commercial partnership, and of which partnership it becomes a modification rather than constituting a separate division of partnerships. Arts. 2828, 2840, R.C.C. That is what is known as a partnership in commendam. It is a "limited" partnership, in the true sense of the word.

The "limited" partnership, containing one or more "general" partners, may be adjudged a bankrupt under the 1938 Bankruptcy Act, and if such adjudication takes place, then, any "limited" partner who is *individually* liable under the laws of the United States, or of any state, for *any* of the partnership debts, shall be deemed a "general" partner as to such debts, and, if he is insolvent, shall be subject to the provisions and entitled to the benefits of this title, as in the case of a general partner. Sections 23, sub. a and 23, sub. k, Title 11, U.S.C.A. (My own emphasizing.)

The partner in commendam and the "limited" or "special" partner is a partner whose status as such is restricted; but in liquidating an insolvent partnership, the only difference between such a partner and a "general" one consists in the former's immunity from liability, as relates to the debts of the partnership, beyond the sum which he agreed to furnish such partnership when he was taken in. Sherwood v. His Creditors, 42 La.Ann. 103, 7 So. 79.

■ The partner in commendam is a "special" partner; he is a "limited" partner; he is not individually liable under the laws of Louisiana, for instance, to the partnership creditors directly, under ordinary circumstances; he is bound and obligated to pay no sum beyond that which he agreed to furnish the partnership, and if he has actually furnished that amount and it was lost in the partnership business, he is exonerated from any further payment. If, on the other hand, he has provided but a part of said agreed sum, he is liable, then, for nothing but the unpaid remainder. R.C.C. Art. 2842; Luse v. Peters et al., 1933, 219 Cal. 625, 28 P.2d 357; Fidelity Trust Co. v. Gaskell, 8 Cir., 1912, 195 F. 865; Paggi v. Rose Mfg. Co. et al., Tex.Civ. App., 285 S.W. 852; Marnet Oil & Gas Co. v. Staley et al., 5 Cir., 1914, 218 F. 45; Collier on Bankruptcy, 14th Ed. 1940, Vol. 1, p. 692, # 5.03; 8 C.J.S., Bankruptcy, p. 512, § 90; Titus v. Maxwell, 6 Cir., 1922, 281 F. 433; St. Ange Lachomette v. Pierre Frederic Thomas, 1843, 5 Rob., La., 172; John R. Marshall v. William M. Lambeth et al., 1844, 7 Rob., La., 471; La Chomette v. Thomas, 1846, 1 La.Ann. 120; In re M. F. Dunn & Bro., 1906, 115 La. 1084, 40 So. 466; Lindley on Partnership, 9th Ed. (1924) p. 923.

■ As is well expressed in Rowley's Modern Law of Partnership, Vol. 2, p. 1370, 1916, a "limited" partnership " * * * is a partnership in which the liability of some of its members to bear any losses the partnership may sustain is limited to a defined amount, while the liability of its other members is not so limited. It must at all times consist of at least one general partner to be answerable to the public under the law for all the obligations of the partnership and at least one partner whose liability is limited to the sum contributed by him to the firm at its organization or to some amount provided by the statute. It is therefore properly based only on the existence of a general partnership and its general partners have the same rights and incur the same liability that members of a general partnership incur, but their duties are even more burdensome since they are deprived of any assistance from the limited members. The liability of a limited partner is generally limited by the statute to the amount he has contributed to the partnership at its formation. * * *"

■ And again, by the same author, in Vol. 1 of his said work, at page 143: " * * *. A limited partnership is one where the firm consists of one or more gen-

eral partners and one or several special partners, the latter being liable for the debts or losses of the firm only to the amount of their several contributions in cash to the firm capital. Provision is made by such statutes for the method in which the limited partnership must be formed and for the publication of notice of the limited liability of certain members. Should there be a failure to comply with these statutory regulations the resulting partnership will be general, and not limited. * * *".

 Clearly, the terms "limited partnerships" and "limited partner", in the Bankruptcy Act of 1938, refer to such limited or restricted partnerships as the Louisiana partnership in commendam, or the Illinois "limited partnership" and "limited partner", under that State's Uniform Limited Partnership Act of 1917, Smith-Hurd Stats., c. 106½ (see Giles et al. v. Vette et al., 263 U.S. 553, 44 S.Ct. 157, 68 L.Ed. 441), or the New York "limited partnership" and "special partner" (see Webster v. Lanum, 2 Cir., 137 F. 376).

 Under the Bankruptcy Act a partnership is properly recognized as a distinct legal entity, separate and apart from the individuals who compose it.

 A partnership with only general partners, or a limited partnership with one or more general partners (since there must be at least one "general" partner to whom is joined at least one "limited" partner before *such* partnership can legally exist) may be adjudged bankrupt, independently of the partners—be they general or limited; conversely, a general partner, as *such,* may be adjudged bankrupt aside and apart from the partnership; but a limited partner unless he be "individually liable" for *any* of the partnership debts, may not, *as partner,* be adjudged bankrupt, inasmuch as he is *not,* under such circumstances, "subject to the provisions and entitled to the benefits" of Title 11 of the 1938 Bankruptcy Act, "as in the case of a general partner" (23, sub. k.)

 In *this* case, even if there existed a partnership, it would be no "limited" partnership, nor would Acadian Production Corporation of Louisiana be a "limited" partner; and therefore, there could, *even then,* be no doubt of the Court's jurisdiction in bankruptcy over said corporation. But, as held hereinabove, there is no partnership here, and the motion to dismiss which is grounded on mover's contention that there

does exist a "limited" partnership, with the two corporation members "limited" and not "general" partners, and that the Court is without jurisdiction to adjudge bankrupt any limited partner until and unless there first be an adjudication of the "limited" partnership and its entire resources are thereafter exhausted, is untenable. Such motion is, therefore, denied; and so is the motion to strike out the petition's paragraph IV.

The motion to dismiss the petition for lack of jurisdiction of the subject matter, because of the pendency of an action against Acadian Production Corporation of Louisiana and others, in the United States District Court for the Western District of Louisiana, having for its object the appointment of a federal receiver to administer a certain mineral lease with reference to the development under which, the mover alleges that the claims of the petitioning creditors arose, is likewise untenable.

 The presence of the suit in question against mover and its co-defendants in the Western District in no manner deprives *this* Court of jurisdiction in bankruptcy; here, in the Eastern District of Louisiana, the record affirmatively shows, is the domicile of Acadian Production Corporation of Louisiana. (§ 11, Title 11 U.S.C.A.). That motion is, therefore, also denied.

 Finally, mover's contention that this Court lacks jurisdiction of the subject matter because (as it claimed) "the amount actually in controversy is less than five hundred ($500.00) dollars, exclusive of interest and costs", falls of its own weight.

The four petitioning creditors assert against Acadian Production Corporation of Louisiana allegedly past due and provable claims in bankruptcy, aggregating $2,675.-78.

The insolvency of their debtor is sufficiently alleged, and the petitioners represent (Par. VI through VIII) that, whilst so insolvent, within four months of the date of filing their petition, their debtor suffered and permitted:

1. An administrator to be appointed under a state court ex-officio judicial sequestration, who "acting in his capacity as receiver or trustee" was charged with the duty of administering one certain item of property then the subject of litigation;

2. The establishment of two certain liens upon and against said debtor's property (under the provisions of the Louisiana

Act 145 of 1934) in favor of Schlumberger Well Surveying Corporation and International Stacey Corporation of Shreveport, Louisiana, respectively, in the sums of $323.65 and $11,942.43;

3. The rendition of a certain judgment against said debtor for $300 with 5% interest from April 14, 1937, until paid, subject to a credit of $100.

Under paragraph IX of their petition, the petitioners further allege that, whilst so insolvent, the said Acadian Production Corporation of Louisiana (within four months of the date of filing their petition) did make three certain transfers of part of its property to certain creditors of the same class as petitioners, with intent to prefer said creditors over petitioners, and to the actual exclusion, prejudice of and preference over petitioners and other creditors of a similar class; one such transfer was to J. W. Milner, another, to Michel Provosty and Patrick W. Murphy, and the last to Regent Drilling Company, Inc.

Then, under paragraph X, several other transfers, which were admittedly made beyond four months from the date of filing of the bankruptcy petition, are set up, with an attempted justification of petitioner's charges thereunder despite the expiration of the four months' period.

As petitioners' counsel, apparently, now concede, the appointment of the administrator in the ex-officio judicial sequestration was not the appointment of a "receiver", denounced in the Bankruptcy Act § 3, sub. a (5), 11 U.S.C.A. § 21, sub. a (5). Standard Accident Insurance Company v. E. T. Sheftall & Co. et al., 5 Cir., 1931, 53 F.2d 40. See also: Duparquet Huot & Moneuse Co. et al. v. Evans et al., 297 U. S. 216, 56 S.Ct. 412, at 416, 80 L.Ed. 591.

As respects the liens, under the Louisiana Act No. 145 of 1934, of which petitioners complain, that Act provides:

"Section 1. * * * any person or persons corporation or corporations who shall perform any labor or service in drilling or in connection with the drilling of any well or wells in search of oil, gas or water, or who shall perform any labor or service in the operation or in connection with the operation of any oil, gas or water well or wells, shall have a lien and privilege on such oil, gas or water well or wells and the lease whereon the same shall be located, and on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks and all other struc-

tures thereto attached or located on said lease for drilling, equipment and operation of such well or lease, for the amount due for such labor or service, in principal and interest, and for the cost of recording such lien and privilege. * * *

"Section 2. If a notice of such claim or lien, setting forth the nature and amount thereof, is filed for record and inscribed in the mortgage records of the parish where said property is located within sixty (60) days after the last day of the performance of such labor or service, in the case of laborers, within sixty (60) days after the last day of the doing, making or performing, as the case may be, of such trucking, towing, barging or repairing, in the case of claimants doing, making or performing such services, and in the case of furnishers of fuel, material or supplies, within sixty (60) days from the last date of the delivery of such fuel, drilling rigs, standard rigs, material or supplies to said well or wells, such lien and privilege shall be superior to all other liens and privileges or mortgages against said property, except taxes or a bona fide vendor's lien and privilege, provided such vendor's lien and privilege exists and is recorded before the work, labor, service, trucking, towing, barging, repairing, or the furnishing of fuel, drilling rigs, standard rigs, material or supplies is begun.

"Section 3. * * * unless interrupted by suit thereon, such lien and privilege, as herein provided for, shall prescribe and become ineffective one year from the date of recordation."

Dart's La.Gen.Stat. vol. 3, 1939 Supp., §§ 5101.1–5101.3.

Statutory liens are within the provision of the Bankruptcy Act that liens shall not be affected by the act, to the extent of present consideration, § 67, sub. b, 11 U.S.C.A. § 107, sub. b; and the laws of the state where adjudication in bankruptcy is had, are controlling as to the validity and extent of a creditor's claimed lien upon and against the bankrupt's property. In re Knox-Powell-Stockton Co., Inc., Ltd., etc., 9 Cir., 1939, 100 F.2d 979; Schexnailder v. Fontenot, Sheriff, et al., 1920, 147 La. 467, 85 So. 207.

All obligations of legal and equitable nature, except those expressly affected by terms of the bankruptcy act, remain undisturbed by bankruptcy. Wilson et al. v. Duncan, 5 Cir., 1932, 61 F.2d 515; Thompson, Trustee, v. Fairbanks, 1905, 196 U.S. 516, 25 S.Ct. 306, 49 L.Ed. 577.

The allegations of paragraph VIII, concerning the "Schlumberger" and "International Stacey" lien debts are proper, and the motion to strike said paragraph VIII from the petition as "impertinent, irrelevant and immaterial", is denied.

As respects the three transfers of property, which mover's counsel place in the same category as the "oil payment" at issue in the case of Posey v. Fargo et al. before the Supreme Court of Louisiana, 187 La. 122, 174 So. 175, a reading of the Court's opinion demonstrates that Gaunce, assignor to Fargo and Hoeft of an undivided one-half interest in and to the Burkett oil lease, was still due, as additional consideration for the assignment, the sum of $600; which sum, it was agreed between the parties, was to be paid him *only* out of the first oil produced and "going to" the assignees as owners under their purchase of the said undivided one-half interest.

There is no need to here discuss the assignment or transfer to Michel Provosty and Patrick W. Murphy, since, as it has been established, whatever rights these two assignees acquired, have all been relinquished and returned back to their assignor, Acadian Production Corporation of Louisiana.

A reference to the certified copies of the instruments, which evidence the transfers to Regent Drilling Co., Inc., and J. W. Milner, respectively, readily shows the transactions there in question to have been entirely different from the one under consideration in the Posey v. Fargo case.

The Regent Drilling Company, Inc., and J. W. Milner, respectively, were sold, conveyed, assigned and delivered, with full warranty, by Acadian Production Corporation of Louisiana fixed, definite percentages of said corporation's 7/8ths proportion of the oil, gas and other minerals as might be produced, saved and marketed from a described property until the assignee, in each instance, actually received, in the aggregate, a fixed definite value. The consideration of the first mentioned transaction is recited to be what is due by Acadian Production Corporation of Louisiana to said Regent Drilling Company, Inc., for the prior drilling of a "dry hole" well; whilst the consideration for the transfer unto J. W. Milner is declared to be $10.00 and "other good and valuable considerations".

Each of these transactions evidences a sale and transfer of a fixed and definite amount of oil, gas and other minerals, such as might be produced, sufficient in quantity to bring the assignee, in each instance, a named sum.

Under Section 3 of the Bankruptcy Act, 11 U.S.C.A. § 21, a debtor who, whilst insolvent, transfers to his creditor, with intent to prefer him over his co-creditors, any portion of the debtor property, thereby commits an act of bankruptcy; and a "transfer", as described by Section 1 of the Act, includes "the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security, or otherwise." Title 11 U.S.C.A., § 1.

Under the circumstances which obtained in the Posey v. Fargo case, the Supreme Court (La.) concluded that the $600 provision of the Gaunce assignment amounted to no more than an acknowledgment that Gaunce was due $600, which he would, however, never have the right to collect except from so much of the first oil produced under the mineral lease there involved, as might properly be delivered and credited to the assignees' account, as purchasers from Gaunce of the one-half interest in and to the said mineral lease.

Had the estates of Gaunce's assignees, Fargo and Hoeft, passed to a trustee in bankruptcy, the whole undivided one-half interest in and to the Burkett oil and gas lease, by them so acquired from Gaunce, would have been included therein, and Gaunce would have been recognized as an ordinary creditor for $600, to be paid *not* out of the general funds of the bankrupt estates but only—and then, *not by preference* over any other creditor—out of such funds as might accrue to the benefit and advantage of the said estates from the bankrupt's said undivided half interest in and to the Burkett oil and gas lease.

The situation, as to the two transfers here under review, reflects conveyances and transfers of something of value —a present taking and divesting of value from the corpus of the insolvent debtor's estate, to the charged detriment of all other creditors of Acadian Production Corpora-

tion of Louisiana; clearly, it was otherwise in the case mentioned and depended upon by mover's counsel.

■ A transfer of property within the meaning of the bankruptcy law includes the giving or conveying anything of value which has debt-paying or debt-securing power. Pirie v. Chicago Title & T. Co., 182 U.S. 438, 21 S.Ct. 906, 45 L.Ed. 1171.

To constitute a preferential transfer within the meaning of the bankruptcy act, there must be a parting with the bankrupt's property for the benefit of the creditor and a consequent diminution of the Bankrupt's estate. Continental & C. T. & S. Bank v. Chicago Title & T. Co., 229 U.S. 435, 33 S.Ct. 829, 57 L.Ed. 1268.

In the Posey v. Fargo case, whilst the existence of an ordinary debt was acknowledged to be due Gaunce by Fargo and Hoeft, the estates of such assignees were actually benefited in that they were relieved from the obligation of payment, except from and through only one source of possible funds; which funds, however, could be shared in common with Gaunce by all other creditors of Fargo and Hoeft.

There was no taking or abstracting of anything from the estates of Fargo and Hoeft to the detriment of anyone; if ever occasion came for Gaunce to profit from the promise to pay the $600 in question, then, every one of his co-creditors of the same "ordinary" class would stand on a parity with him and would share with him the product of the undivided half interest of the Burkett lease.

In view of the above findings, the motion to strike out the allegations of paragraph IX of the petition is also denied.

■ The motion to strike out the allegations of paragraph X, however, appears well taken and is granted; the transfers complained of are alleged to have occurred more than four months before the filing of the petition, and whilst the pleaders seek to avoid the recognized usual legal effects of such a situation, their contention is based upon an erroneous construction and interpretation of Sec. 60 of the Bankruptcy Act, subdivision a, Title 11 U.S.C.A. § 96.

It is not so clear that the allegations of paragraph XII are impertinent, irrelevant and immaterial, and the motion to strike the same is, therefore, denied.

Thus far, no reference has been made in this opinion to the alleged act of bankruptcy charged under caption 2 of paragraph VIII of the petition. Only the rendition of the judgment there involved is alleged; whether it is recorded and operates as a judicial mortgage upon and against the real property of Acadian Production Corporation of Louisiana is not made to appear by the pleadings, but it is not now necessary to order stricken from the petition the allegations of said paragraph VIII, so having reference to said judgment.

■ As to the motion for a bill of particulars, the same is denied.

Rule 12(e) of the Rules of Civil Procedure authorizes a defendant to call "for a more definite statement or for a bill of particulars of any matter which is not averred with sufficient definiteness or particularity to enable him properly to prepare his responsive pleading or to prepare for trial". But the defendant's motion therefor must "point out the defects complained of and the details desired." This, the motion herein fails to do. Just why mover can not prepare its responsive pleading or prepare for trial is not set out.

■ Aside from the fact that a pleading setting forth a claim for relief need contain no more than 1., "A short and plain statement of the grounds upon which the court's jurisdiction depends," etc.; 2., "A short and plain statement of the claim showing that the pleader is entitled to relief"; and 3., "A demand for judgment for the relief to which he deems himself entitled"; and that "all pleadings shall be so construed as to do substantial justice" (Rule 8 (a), (f), matters of evidence are never required to be stated in a bill of particulars. Garfield et al. v. Paris et al., 96 U.S. 557, 24 L.Ed. 821.

■ It can not be otherwise held than that, under the Rules of Civil Procedure applied to this matter in bankruptcy, the petition satisfactorily makes out, on its face, the claim for relief, through the medium of involuntary bankruptcy, which the petitioners seek.