35 Cal.2d 596 (1950)
PAUL W. CASE et al., Appellants,
v.
KADOTA FIG ASSOCIATION OF PRODUCERS (a Growers' Cooperative Association) et al., Respondents.
S. F. No. 17753. 
Supreme Court of California. In Bank. 
July 27, 1950.
 Johnson, Harmon, Stirrat & Henderson, Adams & Griswold and W. G. Harmon for Appellants.
 C. Ray Robinson, Margaret A. Flynn, Pillsbury, Madison & Sutro, Eugene D. Bennett, Samuel L. Wright, Preston, Braucht & George and V. G. Preston for Respondents.
 EDMONDS, J.
 At the time this litigation commenced, Case and Swayne were copartners doing business as the Case-Swayne Company, Kadota Fig Association an unincorporated association of fig growers and Yosemite Growers, a similar organization of peach growers. Case-Swayne sued the fig growers for breach of contract, and the peach growers for assertedly conspiring and inducing a breach of contract by the fig growers. The appeal is from a judgment adverse to Case-Swayne on their complaint and awarding damages to each association on its cross-complaint. The judgment has been fully satisfied by execution.
 The appeal from the judgment presents for decision the following questions upon the merits: (1) Whether there was substantial evidence to support the trial court's conclusion *599 that Case-Swayne, rather than the association, first breached the contract; (2) Whether Kadota's affirmative pleading designated "cross-complaint" was fatally defective because it failed to name as cross-complainants any of its members or trustees; (3) Whether the Yosemite Growers were obligated to resort to arbitration under their contract as a condition precedent to any right to cross-complain; and (4) Whether, in the event the judgment for Kadota upon its cross-complaint is reversed, an order of restitution should be directed against certain of its "withdrawing members" as well as against those who were members of the association at the time execution was levied.
 Case-Swayne contracted to supervise, repair, and operate a cannery built and provided by Kadota and also to market the figs grown by the association's members. The contract further provided that the operators were free to pack other fruit and vegetables during seasons not normally devoted to fig packing, and even during fig packing when the canning of the association's product would not be hampered by the independent operations. Kadota retained the right to use the cannery under specified conditions. The association was to receive a percentage of the gross profit realized by plaintiffs in the packing of fruit other than figs. The term of the contract was at least three years.
 Case and Swayne undertook to maintain certain standards of cleanliness. They also agreed to repair and maintain the canning machinery owned by the association. Although there is some conflict, the evidence supports the conclusion that they were to install new machinery.
 Subsequently, Case-Swayne entered into a contract with Yosemite Growers for the packing of its 1944 peach crop under what was, in effect, a profit sharing arrangement. Both contracts called for accountings and for prompt payments by Case-Swayne to the respective growers' groups of amounts collected in the marketing of the products. The Yosemite contract provided that "Should the parties be unable to agree upon any matter involving the computation or allocation of the costs under this agreement, then they should select an accountant to make such determination."
 Large scale freezing, packing and canning activities were undertaken by Case-Swayne under both contracts. Production continued under gradually deteriorating business relations for approximately one year. Toward the end of this period, *600 the fig growers complained several times of conditions in the packing plant, and demanded that certain repairs and new machinery installations be effected by Case-Swayne. It appears that Case- Swayne canned extensively for other producers, as was provided in the contract, and also processed all of the fig growers' fruit. Substantially all of the frozen and packed figs met government specifications and conformed to the grades intended by the fig growers.
 After about one year under their contract, representatives of the fig growers suddenly removed some machinery from the plant, and otherwise interfered with the operation of the property. Finally, they shut off the steam which propelled the machinery and locked the engine room. Figs were not then in season, and Case-Swayne were packing asparagus.
 The complaint of Case-Swayne charged the fig growers with breach of contract, and Yosemite Growers with conspiring and inducing the breach of contract by the fig growers. Both of the defendants filed cross-complaints. That of the fig association was filed simply in the name of the Kadota Fig Association of Producers. It alleged misconduct on the part of Case-Swayne, including failure to repair and replace machinery, which constituted a breach of its contract. The cross-complaint of Yosemite asked for an accounting and was based upon a conflict as to the amount of money due under its contract with Case-Swayne.
 Upon substantial evidence, the trial court found that the association contract was one of employment and Case-Swayne were guilty of certain misconduct. Aside from isolated instances, such as permitting a conveyor belt to stick at one time, the misconduct consisted of failure to repair and replace machinery. The evidence also tends to show that the plant gutters were permitted to become fouled, the fig jam line was in disrepair and would not function, three coolers were so run down that they could not be operated continuously, and general repairs and replacements after Case-Swayne left required 40 days to complete.
 As conclusions of law drawn from these facts, the court decided that the fig association was entitled to treat the contract as breached, and was justified in taking possession of its plant. Furthermore, since Case-Swayne first violated the fig contract, no cause of action was established against Yosemite for allegedly inducing breach of contract.
 Judgment was rendered for both defendants upon the complaint. The sum of $73,600 plus interest was awarded the fig *601 growers under their cross-complaint and $20,500 plus interest to Yosemite. Under writ of execution, Kadota and Yosemite have collected $80,550 and $24,333, respectively.
 Case-Swayne, in urging this court to reverse the judgment against them upon their complaint, challenge the evidence as being insufficient to justify the trial court's conclusion that they first breached the fig packing contract, and assert that they should have been given an opportunity to rectify any claimed breaches by them. They also maintain that the contract was a lease of the plant. As grounds for a reversal of the judgment for Kadota upon its cross-complaint, Case-Swayne declare that an unincorporated association is not a legal entity competent to sue, and the failure to enumerate the individual members as cross-complainants is a fatal defect in the pleading. Another attack is made upon the judgment because, it is said, the court was not justified in awarding Kadota certain special damages, including the equivalent of Swayne's salary, damage to plant and machinery, and a balance due on account. These special items are questioned upon the ground that the evidence does not sustain either award.
 Other points are relied upon in demanding relief against the judgment for Yosemite upon its cross-complaint. It is argued that Yosemite failed to submit the dispute to arbitration, as required by the contract, prior to initiating its action, and that the court erred in construing the contract to include certain costs as being chargeable to Case-Swayne. An order of restitution from both Kadota and Yosemite is also sought.
 The two associations declare that none of Case-Swayne's points is well taken. According to them, the evidence justifies the conclusion that Case- Swayne were guilty of flagrant misconduct, culpable negligence and wilful disregard for the terms of the fig-packing contract. The record also supports the conclusion, they declare, that Case-Swayne breached the terms of the peach-packing contract with Yosemite Growers by wrongfully withholding money due under that contract.
 In regard to the asserted deficiency in pleading, Kadota says it was justified in filing its counteraction under its business name because it was entitled to defend under that name, and was obliged to set up its claim or else waive it. Its compliance with the fictitious name statute entitled it to sue under its business name; and Case-Swayne are estopped to question capacity. Finally, says Kadota, its "cross-complaint" was *602 also a counterclaim, and, as such, not a separate action. Yosemite answers the charge of an obligation to submit its claim to arbitration by saying that the contract provided for arbitration, if at all, only as to accounting matters, and this controversy concerns only the allocation of costs.
 The Complaint
 [1] According to the findings of the trial court, Case and Swayne were employed by Kadota in a confidential relation and the contract gave Case-Swayne Company a license to process fruit in the cannery. The record shows that Case-Swayne did not have exclusive possession of the plant, and Case testified that he followed all directions or instructions of Kadota. The contract provided for the "... services of an experienced production man and a Western sales manager ..." and stated, "The rendering by each of said individuals of their personal services shall be deemed to be a material consideration. ..." The agreement also contained a provision that "... said Amos Swayne shall also direct and supervise the current maintenance and repair of the Association machinery and equipment and annual general overhauling." This with other similar evidence substantially supports the finding that the relationship was that of employer and employee.
 [2] Case-Swayne argues that they fulfilled all of the obligations of their contract, whether it be one of lease or employment. But there is abundant evidence tending to show that they failed to maintain or repair the canning machinery and the plant. Upon this evidence the court found that the operators breached the contract before the plant was forcibly closed by Kadota. Under these circumstances, there is no basis whatever for the claim that Yosemite induced a breach of contract by the fig growers.
 The Cross-Complaint of Kadota
 [3a] In California, persons associated in business under a common name may be sued under that name (Code Civ. Proc., 388; Jardine v. Superior Court, 213 Cal. 301 [2 P.2d 756, 79 A.L.R. 291]). However, this statutory relaxation of the common law applies only to associated defendants. Associated plaintiffs still must sue in their individual names (Holden v. Mensinger, 175 Cal. 300, 305 [165 P. 950]). One question presented, therefore, is whether cross-complainants must be regarded as plaintiffs. *603
 "A cross-complaint is a pleading separate and apart from the answer, and is required to be complete and sufficient in itself. It cannot be aided by averments to the answer" (Luse v. Peters, 219 Cal. 625, 630 [28 P.2d 357]). "These cross-actions, however, are still distinct and independent causes of action, so that when properly interposed and stated the defendant becomes in respect to the matters pleaded by him, an actor, and there are two simultaneous actions pending between the same parties wherein each is at the same time both a plaintiff and a defendant." (Pacific Finance Corp. v. Superior Court, 219 Cal. 179, 182 [25 P.2d 983, 90 A.L.R. 384].)
 [4] The requirement for stating the names of members of unincorporated associations is not purely technical or historical. The defendant is entitled to know which individuals will be responsible for costs or restitution in the event that he defeats a recovery by the plaintiff. [3b] Another factor is the rule that a cross-complaint can name a cross- defendant other than the person who brought the action. If persons doing business under a fictitious name were permitted to cross-complain against a stranger to the action, without naming the members of the association, the cross-defendant would be under the same disadvantage as one who is sued by a group using a fictitious name which does not disclose the identity of the individual members.
 [5] However, if the pleading filed by Kadota is a counterclaim rather than a cross-complaint, the objection as to legal capacity is of no consequence. This pleading is designated: "Cross-Complaint," and opens with the words, "Comes Now the cross-complainant Kadota Fig Association of Producers ... and by way of cross-complaint alleges: ...." It does not enumerate the individual members of Kadota and, for that reason, as a cross-complaint by an unincorporated association, it would be fatally defective.
 [6] A counterclaim is not an independent pleading, and may stand or fall in conjunction with the answer. [7] Section 438 of the Code of Civil Procedure provides that the counterclaim "... must tend to diminish or defeat the plaintiff's recovery and must exist in favor of a defendant and against a plaintiff between whom a several judgment might be had in the action. ..." Also, by statute: "If the defendant omits to set up a counterclaim upon a cause arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, neither he nor his assignee can afterwards maintain an *604 action against the plaintiff therefor." (Code Civ. Proc., 439.)
 "... [U]nder our system of procedure, there is a very shadowy line of distinction between a cross-complaint and a counterclaim and a considerable area in which they overlap." (Schrader v. Neville, 34 Cal.2d 112, 114 [207 P.2d 1057].) Moreover, "... it is well established that as between a counterclaim and a cross-complaint the nature of the pleading will be determined from its allegations regardless of its designation. (Terry Trading Corp. v. Barsky, 210 Cal. 428 [292 P. 474]; Cornblith v. Valentine, 211 Cal. 243 [294 P. 1065]; Robertson v. Maroevich, 42 Cal.App.2d 610 [109 P.2d 708].)" (Schrader v. Neville, supra, p. 114.) Therefore, regardless of the caption and introduction of Kadota's pleading, it may be treated as a counterclaim, if it satisfies the statutory requirements for a pleading of that kind.
 In Elevator Operators etc. Union v. Newman, 30 Cal.2d 799, 808 [186 P.2d 1], the sole requisites of a counterclaim were said to be that it " '... must tend to diminish or defeat the plaintiff's recovery and must exist in favor of a defendant and against a plaintiff between whom a several judgment might be had in the action.' (Terry Trading Corp. v. Barsky, 210 Cal. 428 [292 P. 474], Luse v. Peters, ante, p. 625 [28 P.2d 357].)" [8] Kadota's claim for damages resulting from breach of contract by Case-Swayne tended to diminish or defeat the similar claim by Case-Swayne against the association. It was a claim in favor of a defendant and against a plaintiff between whom a several judgment might be, and in fact was, rendered. Had Kadota not presented its claim in the action, the right to recover damages against Case-Swayne would have been waived (Code Civ. Proc., 439.)
 For these reasons, Kadota's pleading was a counterclaim as well as a cross-complaint, and the omission of the names of the individual members was not fatal. And upon the merits of the cause of action stated by the fig growers, the record shows substantial evidence to support the judgment.
 The Cross-Complaint of Yosemite
 [9a] Paragraph 8 of the Yosemite contract provided, among other things:
 "Should the parties be unable to agree upon any matter involving computation or allocation of costs under this agreement, they shall select an accountant to make such determination." Case-Swayne insist that the quoted words constitute an *605 irrevocable requirement for the arbitration of any dispute arising under the contract. From this premise they reason that, as there has been no submission to arbitration, the judgment in favor of Yosemite upon its cross-complaint should be reversed.
 By section 1280 of the Code of Civil Procedure, the parties to the written contract may agree "to settle by arbitration a controversy thereafter arising out of [it]. ..." Such a provision "shall be valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. ..." The terms of the Yosemite contract are not as specific as those ordinarily found in an agreement based upon this statute. An essential element of a provision for arbitration is agreement of the parties "to settle by arbitration" a controversy which may arise between them. Here there was no agreement to abide by the "determination" of an accountant selected by them.
 But assuming that the contract might be construed as being one contemplated by the code section, the asserted right of Case-Swayne to arbitration as a condition precedent to the maintenance by Yosemite of the cause of action stated in its cross-complaint must be considered in connection with the procedural basis of the litigation as a whole. [10] Case-Swayne sued Yosemite alleging that it had wrongfully induced Kadota to breach its contract. One defense available to Yosemite under its general denial was that there had been no such breach. Obviously, if no breach had occurred, Yosemite could not have committed the wrong charged against it.
 [9b] To establish its defense on that ground, evidence concerning performance by Kadota was relevant and material. The contract made by Kadota for the use of its plant expressly authorized Case-Swayne to pack fruit and vegetables other than figs. There were provisions relating to the proration of costs. The claims of Case-Swayne as to the amount of and liability for those costs, which include charges for fuel, power, and water, warehouse labor and similar expenses, in addition to its asserted mismanagement of the packing plant, were relied upon by Kadota as justification for taking possession of its property.
 In suing for inducement of breach of contract, Case-Swayne was chargeable with the knowledge that Yosemite would not be liable for damages if Kadota was justified in ousting Case-Swayne from the property. The issue presented *606 by Case-Swayne in the action against Yosemite, therefore, inevitably included the question of performance by Kadota, and it could not be completely determined without ascertaining the amounts chargeable to Yosemite. The Kadota contract, by authorizing Case-Swayne to pack fruit other than figs, expressly contemplated contracts such as the Yosemite agreement, and the Yosemite contract referred to the Kadota agreement by stating that Case-Swayne had the right to use the plant facilities. The expenses of Case-Swayne in packing fruit other than figs, and for which it was required to account to Kadota, necessarily depended upon the results of its peach packing operations. Evidence tending to prove that it was Case- Swayne and not Kadota which had breached the contract, at least in part also fixed the rights of Case-Swayne and Yosemite as to certain costs. Otherwise stated, the cause of action pleaded by Yosemite against Case-Swayne was inextricably linked with, and an essential part of, its defense upon the charge of inducing a breach of contract.
 Moreover, although Yosemite's pleading was designated a cross-complaint, the cause of action stated in it tended to diminish or defeat the Case-Swayne recovery and existed in favor of a defendant and against a plaintiff between whom a several judgment might be had in the action (Code Civ. Proc., 438). Like that of Kadota, it was also a counterclaim. It presented "A cause arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim," and one which Yosemite was obliged to raise. (Code Civ. Proc., 439.) For these reasons, by resorting to litigation, Case-Swayne waived any right it might have had to require the selection of an accountant to make a determination of any matter involving the "computation or allocation of the costs" under its agreement with Yosemite. (Jones v. Pollock, 34 Cal.2d 863, 867 [215 P.2d 733].)
 These conclusions make it unnecessary to consider the question as to the liability of the growers who withdrew from the Kadota Fig Association after the action was commenced. The petitions for permission to introduce additional evidence are therefore denied.
 The judgment is affirmed.
 Gibson, C.J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.