## In re PALMER et al.

District Court. S. D. New York.

July 11, 1932.

Zalkin & Cohen, of New York City (Israel Akselrod, of New York City, of counsel), for receiver Irving Trust Co.

Caldwalader, Wickersham & Taft, of New York City (M. M. Manning, of New York City, of counsel), for Palmer & Co.

G. W. Goddard, for Irving Trust Co.

Nims & Verdi, of New York City (Edward T. Pierce, of New York City, of counsel), for creditor Charles J. Foley.

Morris F. Goldstein and Percival E. Jackson, both of New York City, for Creditors' Protective Committee.

Gwinn & Pell, of New York City (John B. Butler, Jr., and C. C. Curtis, both of New York City, of counsel), for Utah Southern Oil Co.

John Knight Holbrook, of New York City (Ernest H. Breuer, of New York City, of counsel), for creditor William L. Dixon.

Leonard M. Henkin, of New York City, for creditor Louis Helshewitz.

Otto M. Goldsmith, of New York City, representing claim by assignment.

Javits & Javits, of New York City (J. K. Javits, of New York City, of counsel), for Louis S. and Rose Lasdon, reclamation creditors.

Baldwin, Hutchins & Todd, of New York City (M. G. Herold, of New York City, of counsel), for alleged bankrupts.

Satterlee & Spence, of New York City (Kenneth Walser, of New York City, of counsel), for alleged bankrupts.

Kellogg, Emery & Inness-Brown, of New York City (George Koegler, of New York City, of counsel), for Harold and Alonsita Walker.

Chadbourne, Stanchfield & Levy, of New York City (Martin D. Jacobs, of New York City, of counsel), appearing specially for William E. Telling, a limited partner of Palmer & Co.

Charles A. Loreto, of New York City, for creditor William J. Modon.

W. H. Kellogg, of New York City, for creditor Robert J. Marony.

Beardsley & Taylor, of New York City, for creditor W. W. Ervine.

Ludlow S. Fowler, of New York City, for Thomas P. Fowler, one of alleged bankrupts.

WOOLSEY, District Judge.

The motion to confirm this composition is denied without prejudice to a resubmission to the creditors by the bankrupts of the offer of composition already made, or the submission of any other offer of composition which the bankrupts may deem it advisable to make.

I. Six hundred and thirty-eight claims, aggregating $684,716.86, have been allowed.

Of that number 506 claims, aggregating $456,598.20, have voted in favor of accepting the composition offer made by the bankrupts, which has been under consideration before me.

Four claims, aggregating $54,717.13, voted against the composition.

It will thus be seen that, on individual votes, the creditors are overwhelmingly in favor of accepting the composition, and in amount, more than two-thirds have voted in favor of it.

II. In approaching the decision of a situation such as I have to deal with here, it is, I think, important to recapitulate to a certain extent what is before me.

■ 1. A composition is a separate proceeding ancillary to a bankruptcy proceeding, and authorized by section 12 of the Bankruptcy Act (11 USCA § 30). Cumberland Glass Mfg. Co. v. DeWitt, 237 U. S. 447, 35 S. Ct. 636, 59 L. Ed. 1042; Nassau Smelting & Refining Works v. Brightwood Bronze Foundry Co., 265 U. S. 269, 271–274, 44 S. Ct. 506, 68 L. Ed. 1013; Myers v. International Trust Co., 273 U. S. 380, 383, 47 S. Ct. 372, 71 L. Ed. 692.

The Bankruptcy Act, in section 12, provides that a bankrupt may offer terms of composition to his creditors either before or after adjudication. As there has not been any adjudication in the present case, the title to the assets still remains in the bankrupts.

■ 2. It is settled that a copartnership is dealt with by the bankruptcy court as a separate entity. Cf. Bankruptcy Act, § 1, subd. 19, section 5, 11 USCA §§ 1 (19), 23.

I have already sustained the filing of a composition by the general partners.

■ A composition by a firm discharges the partners from dischargeable debts on which the partners are jointly liable. In re Coe, 183 F. 745, 747 (C. C. A. 2); Nashville Saddlery Co. v. B. J. Green, 127 Miss. 98, 89 So. 816, 47 Am. Bankr. Rep. 368, 371; Abbott v. Anderson, 265 Ill. 285, 291, 106 N. E. 782, L. R. A. 1915F, 668, Ann. Cas. 1916A, 741.

■ 3. It is objected that in the absence of Mr. Telling, who, as I found, is a special partner, the firm cannot properly arrange for its liquidation as is contemplated by this offer of composition. I think that the answer to this contention is that the liquidation of the firm was decided for them by the creditors when the involuntary petition in bankruptcy was filed against them.

Such being the fact, by the partnership articles, the general partners have control of the liquidation, and I do not think that the special partner, even if he were present and opposed, would be in a position to make any valid objection to the procedure which the general partners have proposed.

They have made an offer to assign their partnership assets to a liquidation corporation, which is a method they regard as preferable to having the estate liquidated in the bankruptcy court.

The result is that what the general partners have offered to do is within their competence, and the ghost of Mr. Telling's position in the firm need no longer haunt us. Cf. Petition of Williams, 297 F. 696 (C. C. A. 1), which would seem fully to confirm the correctness of my previous ruling as to Mr. Telling's status and as to the fact that the composition may proceed without him.

4. None of the specifications is pointed to any act on the part of the alleged bankrupts which would be a bar to his discharge under section 12d, subdivision 2, or to the fact that the offer and acceptance are not in good faith or have been procured by any means, promises, or acts forbidden by the Bankruptcy Act. Cf. section 12d, subd. 3.

Thus, so far as the specifications are concerned, I am in a zone of discretion to determine whether the composition is for the best interests of the creditors (section 12d, subd. 1); but my right to exercise this discretion depends on whether the proceedings have complied with the requirements of the Bankruptcy Act.

III. The Bankruptcy Act, section 12, requires that: "(a) A bankrupt may offer, either before or after adjudication, terms of composition to his creditors after, but not before, he has been examined in open court or at a meeting of his creditors, and has filed in court the schedule of his property and the list of his creditors required to be filed by bankrupts. In compositions before adjudication the bankrupt shall file the required schedules, and thereupon the court shall call a meeting of creditors for the allowance of claims, examination of the bankrupt, and preservation or conduct of estates, at which meeting the judge or referee shall preside. * * * *" (11 USCA § 30 (a).

The reason behind this requirement for the filing of schedules before a composition is offered is, I think, quite clear.

It is that the bankrupts are required to show to the creditors in definite form what their assets and liabilities are, so that the creditors may know, when the offer of composition is made to them, whether it will be of advantage to them to accept the composition or whether they would prefer to proceed by way of the ordinary liquidation in bankruptcy.

The creditors by the filing of such schedules are given a sworn standard of comparison by which they may judge whether the composition offered to them is advantageous.

A full disclosure in formal shape is thus before all creditors.

As the ultimate objective of the provision of section 12 is that, when the proper situation is shown, nonconsenting creditors may be forced into the composition, it is obvious that the bankrupt must comply strictly with the provisions of that section. If citation for this is needed, see Judge A. N. Hand's decision in Re Berler Shoe Company (D. C.) 246 F. 1018.

IV. With this explanation of the reason for the statute in mind, it is clear that when a copartnership comes into court with an offer of a composition and the court has to apply section 12 to it, the schedules filed should represent all the assets to which the copartnership creditors may be entitled to look.

Creditors of a copartnership have two sources of payment: (1) The copartnership assets; (2) the assets of individual partners after the payment of their several individual debts.

Consequently, when a composition is offered by a copartnership to the copartnership creditors, in order to give them their proper standard of comparison as to the advantages of such offer, not only the schedules of the copartnership as such, but the schedule of such of the individual partners as are participating in the offer of composition and expect to avail themselves thereof, should be filed.

Under the statute, I think it is perfectly clear that the filing of these schedules is requisite as a condition precedent of the offer. For copartnership creditors are entitled to see not only the amount of the copartnership assets, but also of the individual assets which will be left after the payment of individual debts, so that they may judge for themselves whether the composition offer is advantageous to them.

It seems to me that this is implicit in the whole theory of composition offers.

I have not, however, been able to find any definite authority on the point; but I observe that according to the report of In re Breitbart (D. C.) 291 F. 693, which was a partnership composition, individual schedules seem to have been filed in addition to the partnership schedules.

V. In the present case, the partnership schedules were filed before the offer of composition was made, but the schedules of the individual partners were not filed then, and, indeed, they were not filed until July 7th, during the hearing on this motion to confirm, when they were put in as exhibits that they might be before me in exercising my discretion in determining whether the composition was for the best interest of creditors.

At that time I indicated that the schedules could be dealt with in this manner. On reflection, however, I think that my ruling then was wrong, and that a copartnership composition offer made before the schedules of the copartnership itself and of all the partners participating in the composition are filed, cannot be entertained by the court under section 12 because partnership debts are, after all, debts of members of the firm. Francis v. McNeil, 228 U. S. 695, 33 S. Ct. 701, 57 L. Ed. 1029, L. R. A. 1915E, 706.

It is true, of course, that when the question of marshaling as between copartnership and individual creditors comes up, the copartnership assets must first be used to liquidate partnership debts, and only after such assets are gone do the assets of the individuals become available to copartnership creditors, and to the extent only that there are such assets left after the debts of individual partners are paid. But the question here is

not of marshaling, but of the copartnership creditors having a full opportunity to judge of the advantage of the composition offered.

VI. In view of the hearings that have been had and the trouble to which all of us who have participated in this matter have been put, I think it is only fair to say that there is not involved in this decision any criticism whatever of the bankrupts or their counsel.

It is a situation which has arisen owing to the lack of authority in the books. This resulted in what I believe is the mistaken view taken by the bankrupts' counsel that the individual partners did not need to file their schedules before the composition offer was made. I do not say this in criticism of counsel, however, because the question is nice and by no means easy to decide.

Hard cases, however, cannot be allowed to be the parents of bad law, and a court must always look beyond the particular case before it and make as sure as it can in each decision that a wise precedent for subsequent cases is being laid down.

I have spent the last two days in considering this question, because, unless I felt that I must do so, I did not wish to let the work that has already been done here become thus fruitless.

But it is my considered opinion that failure to file the schedules of the individual partners before the composition offer was made is a fatal flaw in the proceedings which prevents my confirming the composition.

VII. It is most regrettable that I have to make this decision, because, if this situation were absent, I should have confirmed the composition herein. For it seems to me that when a majority of the creditors in number and amount wish to have a case dealt with by composition, the court finds itself in a business zone to a large extent, and must be guided in its actions by the wishes of the interested parties, providing the proceedings have been regular and fair, and providing there is not any reason why the parties, under the statute, should not be allowed to do as they see fit in composing their differences.

■ 1. I do not find any objection to the method of liquidation through a liquidation corporation. Objection on this ground, I think, is not tenable. In re Graham & Sons, 252 F. 93, 98 (C. C. A. 7).

The provision for such a liquidation corporation is part of the composition offer which has been accepted by a majority of the creditors. The liquidation corporation has filed an appearance and submitted itself to the summary jurisdiction of this court.

Furthermore, a liquidation in the manner contemplated has advantages over a liquidation by any other method, for if liquidated through a corporation, the liquidation will be a business matter unhampered by technicalities and will probably proceed more sedately, which is a great advantage in a case like this at a time like this. Thus only, it seems to me, the slow assets will have a fair chance of satisfactory realization.

2. The guarantee of the certificates of indebtedness of the corporation, given by some of the partners up to $350,000, is an assumption of possible liability to that amount which is entirely voluntary and highly commendable.

It has the advantage of stimulating the interest of the partners involved thereby in the liquidation of slow assets, for the more those assets realize, the less will be their liability; and, too, it means that to the extent of the guarantee the partners involved will continue to work for the benefit of their creditors.

3. There is not anything improper in the provision for the discharge of Mr. McNamara and Mrs. MacGowan from claims which might be pressed against them by a trustee. Their waiver of possible defense is predicated on such release, and their so-called contributions have been turned over to the liquidation corporation on that consideration. Indeed, their release would be the result of a confirmation of the composition even if they had not been referred to in the offer. Cobb v. First National Bank (D. C.) 263 F. 1000, 1002.

Owing to these so-called contributions, the allowances granted herein have been more than covered, so the estate has not been impinged upon to meet the allowances.

VIII. All these considerations which I have mentioned would, in the light of the acceptance by a majority of the creditors, have led to a confirmation of the report if the proceedings had been regular; but for the reasons above stated, I am unable to confirm the composition at the present time.

My decision, however, is without prejudice to the resubmission to the creditors of the offer already made, or the submission of any other offer which the bankrupts may wish to make to them.