[S. F. No. 16772. In Bank. Nov. 2, 1942.]

D. J. MUELLER, Appellant, v. ELBA OIL COMPANY (a Partnership) et al., Respondents.

Mueller & Westover for Appellant.

Rosendale, Thomas & Muller for Respondents.

SCHAUER, J. pro tem.—This is an appeal by plaintiff from a judgment for defendants Frank Raiter and Louis Oleari in an action to recover the price of goods sold and delivered by plaintiff's assignor to the Elba Oil Company, a partnership, in which the two defendants above named were among the general partners. Except as otherwise specifically noted the term plaintiff will hereinafter be used in referring either to plaintiff or to his assignor and the term defendants will be understood as designating the respondents Raiter and Oleari. All italics within quotations are added.

As previously mentioned the merchandise was sold to the partnership. The debt was unsecured. Subsequent to the sale but prior to trial of this action the partnership, upon involuntary petition, was adjudicated a bankrupt and in due course was discharged from its scheduled debts, including that sued on here. In course of administration of the bankrupt partnership estate the trustee instituted a proceeding to marshal the individual assets of the general partners. Such proceeding, or more technically, the controversy arising out of it, was compromised upon terms approved by order of the bankruptcy court. The compromise was predicated on, among other things, a disclosure of the assets and personal liabilities of the defendants. Its terms, as established by the order, included payment of $7,500 in cash, advanced by a bank for the defendants, to the trustee and the reciprocal consideration "that upon receipt

of said sum of $7500.00 by the Trustee that the said Frank G. Raiter and Louis G. Oleari, and each of them are fully and completely released and discharged from any and all claims, demands, liability, causes of action or judgments against them or either of them, as general partners of the above-named bankrupt." It is stipulated that "the sum of $7,500, was . . . received, accepted, and expended by said Trustee in accordance with said order."

This action is predicated on the personal liability of defendants as general partners. Their defense is based on two propositions: (1) Release and discharge effected by the order of the bankruptcy court above mentioned; (2) discharge in bankruptcy of the individual partners as legally incident to formal discharge of the bankrupt partnership. The case was tried upon an agreed statement of facts which the trial court impliedly found to sustain the defenses above mentioned. Plaintiff challenges both of the defenses, contending that the order of the bankruptcy court in the compromise proceeding was void as to plaintiff and that the discharge of the partnership did not operate to discharge the defendants individually.

We find that the determination of but one major question is essential to our decision: Is the order of the bankruptcy court, approving the compromise and releasing the defendants, binding on plaintiff? In reaching an affirmative conclusion we survey the pertinent provisions of the bankruptcy law as it stood both before and after the 1938 amendments, together with appropriate decisions of both federal and state courts throwing light on the jurisdictional questions involved. In our discussion of the Bankruptcy Act and of federal court decisions construing its provisions we are not to be understood as assuming in any instance to declare what constitutes the true rule or better practice on a federal question in a federal tribunal. We are interested not at all in determining what constitutes in a federal court a proper as distinguished from an erroneous ruling. We are concerned only with noting rulings authoritatively made showing the jurisdictional compass of the court.

For clarity and brevity of presentation the following chronology of facts is convenient:

Dec. 31, 1937 Involuntary Petition in Bankruptcy filed (against Elba Oil Company naming defendants among general partners).

| | |
|---|---|
| Jan. 4, 1938 | Partnership adjudicated bankrupt. (Scheddule filed in due course correctly and adequately listing debt due plaintiff's assignor.) |
| March 11, 1938 | Notice given all creditors. (In due course trustee was regularly elected, appointed, and qualified.) |
| April 4, 1938 | Trustee filed petition for marshaling assets of partners. |
| April 7, 1938 | Order to show cause on petition to marshal assets issued and served on defendants. |
| April 14, 1938 | Second order to show cause on petition to marshal assets issued and served on defendants. |
| June 28, 1938 | Offer on behalf of defendants to compromise marshal assets controversy (by paying $7,500 to trustee) submitted to trustee. |
| Sept. 22, 1938 | The 1938 amendments to the bankruptcy act became generally effective. |
| Dec. 19, 1938 | Third order to show cause on petition to marshal assets issued and served (controversy still continuing). |
| Jan. 30, 1939 | Trustee filed in bankruptcy court his petition to compromise the controversy, based on the offer of June 28, 1938. (Petition regularly set for hearing on February 14, 1939, and due notice given *all* creditors including plaintiff's assignor.) |
| Feb. 14, 1939 | Meeting of creditors; order of court for compromise of controversy and release of defendants made and entered. (This terminated the marshal assets proceeding; the $7,500 was then accepted by trustee and expended pursuant to court order; the order was not appealed from and became final.) |
| March 6, 1939 | The partnership was discharged and its bankruptcy administration closed. (This order implies approval of and reliance upon the compromise-termination of the marshal assets proceeding and the receipt and expenditure of the $7,500 thereby obtained.) |

The offer of compromise in the marshal assets proceeding, insofar as it was reduced to writing, was submitted by a bank

on behalf of the defendants, was addressed to the trustee, and was in words and figures as follows:

"Enclosed herewith is our cashier's check in the sum of $7500.00, dated June 28, 1938, numbered 7794 and payable to you as trustee of the Estate of Elba Oil Company, bankrupt. This check is delivered to you for the sole and exclusive purpose of using the same and the proceeds thereof for effecting, completing, and paying a composition of creditors of said Elba Oil Company, No. 31187-Y, of the District Court of the United States, Southern District, Central Division, according to the terms and conditions of offer heretofore made or hereafter to be made by our clients, Frank E. Raiter and Louis G. Oleari, as copartners of said Elba Oil Company.

"We are advised that the terms and conditions of said offer are or will be as follows: (1) that all secured creditors of said Elba Oil Company shall take and accept all properties described in their respective securities in full satisfaction and discharge of the debts secured thereby; (2) that *all unsecured creditors* and all trustees' fees, attorneys' fees, receivers' fees, costs, etc., *shall be fully satisfied and paid out of said sum of $7500;* and (3) that each creditor of said Elba Oil Company shall execute in writing a full and complete release and discharge of our clients, Frank E. Raiter and Louis G. Oleari, of and from any and all individual liability to each of said creditors. If you effect, complete, and obtain confirmation of a composition of creditors upon such terms and conditions, you are authorized to use the proceeds of said check for payment of said fees, costs, claims of unsecured creditors, etc., but for no other purpose, and in the event that you are unable to effect, complete, and obtain confirmation of such composition within three months from the date hereof, you shall return said sum of $7500.00 to us without deduction of any kind whatsoever. *Until and unless said composition shall be so effected, completed, and confirmation thereof obtained, said sum of $7500.00 shall be and remain the property of the undersigned.*"

While such offer of compromise uses the words "composition of creditors" in referring to the purpose of the offer, the ends to be attained and the conditions for payment of the money are specified as (1) that all secured creditors of the partnership shall accept their securities in full satisfaction of the secured debts; (2) that all unsecured creditors and fees and costs "shall be fully satisfied and paid out of said

sum of $7500; and. (3) that each creditor of said Elba Oil Company shall execute in writing a · full and complete release and discharge of . . . Frank E. Raiter and Louis G. Oleari, of and from any and all individual liability to each of said creditors.'' In other words, the ultimate and controlling objective of the offer to pay $7,500 apparently was the complete release or discharge of the defendants Raiter and Oleari from individual liability for debts of the partnership. *It was not sought to secure their release or discharge from their individual debts outside of their partnership liability.*

It has been held that technically a partnership is an entity which may be adjudged bankrupt irrespective of any adjudication of the individual partners as bankrupts (*Luse* v. *Peters,* (1933) 219 Cal. 625, 629 [28 P.2d 357]; see cases cited in note 7, annotations to § 23, tit. 11, U.S.C.A.), although it has been said to be error or at least incongruous, to adjudicate and discharge a partnership firm without adjudication and discharge of the individual partners (see note [hereinafter quoted in part] on p. 669 of L.R.A. 1915F and cases cited). In any event, it was authoritatively held that under the Bankruptcy Act prior to the 1938 amendments the adjudication of a firm gave the bankruptcy court jurisdiction to take over the separate estates of the partners and to administer them so far as necessary to complete settlement of the partnership estate. (*Dickas* v. *Barnes,* (1905, 6 Cir.) 140 F. 849 [72 C.C.A.. 261, 5 L.R.A.N.S. 654, 656, 15 Am. Bankr. Rep. 566]; *Francis* v. *McNeal,* (1913) 228 U.S. 695, [33 S.Ct. 701, 57 L.Ed. 1029, L.R.A. 1915E, 706], affirming (Pa., 1911) 186 F. 481 [108 C.C.A. 459, 26 Am. Bankr. Rep. 555].)

An individual partner's property when taken over must be applied first to the payment of his individual debts and the surplus, but only the surplus, is then added to the partnership assets, and if any surplus of partnership property remains after paying its debts such surplus is added to the assets of the individual partners in the proportion of their respective interests in the partnership. (§ 23(f), tit. 11, U.S.C.A., becoming § 23(g), tit. 11, in 1938 [§ 5, Bankr. Act].) Jointly in the partnership proceeding, as the law now stands, any number of general partners may be adjudicated bankrupt. (§ 23(a), tit. 11, U.S.C.A. [§ 5, Bankr. Act].) Those who are so adjudicated and who otherwise comply with the bankruptcy law are entitled to discharge

from their individual as well as from partnership debts. (§ 23(j), tit. 11, U.S.C.A. [§ 5, Bankr. Act.].)

Prior to the effective date of the 1938 amendments to the Bankruptcy Act it was held by high authority that partners who were not individually adjudicated bankrupt were, nevertheless, by the discharge of the bankrupt firm, themselves discharged from further liability for partnership debts. (*Abbott* v. *Anderson*, (1914) 265 Ill. 285 [106 N.E. 782, L.R.A. 1915F 668]; see, also, *Francis* v. *McNeal, supra,* (1913) 228 U.S. 695 [33 S.Ct. 701, 57 L.Ed. 1029, L.R.A. 1915E, 706].) · In the note on page 669 of L.R.A. 1915F, annotating *Abbott* v. *Anderson, supra,* after referring to *Francis* v. *McNeal, supra,* it is stated that ''The law can therefore be regarded as settled that a discharge of a partnership in bankruptcy discharges the members thereof from liability for *firm debts,* whether the bankruptcy court brought in the members of the firm and their property or erroneously discharged the firm as an entity without an adjudication of the individual members.'' It will also be noted that the Supreme Court in *Francis* v. *McNeal, supra,* overruled *In re Bertenshaw,* (1907, 8 Cir.) 157 F. 363 [85 C.C.A. 61, 13 Ann. Cas. 986, 17 L.R.A.N.S. 886], in its earlier *arguendo* ruling (at page 369 of 157 F.) that ''the creditors of the partnership may subject the individual property of the unadjudicated partners to the payment of their debts before during or after the bankruptcy proceedings, by actions at law, by suits in equity or by other proceedings.'' Furthermore, as to the jurisdiction and power of the bankruptcy court to discharge partners from liability for firm debts although they remain technically unadjudicated as bankrupts, the Circuit Court of Appeals, Eighth Circuit, in *Armstrong* v. *Norris,* (1917, 8 Cir.) 247 F. 253, 255 [159 C.C.A. 347], said: ''The bankruptcy of their firm made Brown and Norris as individuals parties to the proceeding, so far as their rights and liabilities as debtors were necessarily involved in its scope and effect. They were in court jointly and severally. The partnership debts were their debts. Their individual liability therefor was primary and direct, not collateral. The partnership property that was administered was their property, for a deficiency of which to pay the debts their individual estates, if any, were bound, and were subject to the jurisdiction of the court in that proceeding for equitable marshaling and application. . . . Ordinarily

it is true that a discharge in bankruptcy implies a prior adjudication of the person discharged, but the rule should not be applied too literally. When a partnership alone has been adjudged bankrupt, the individual partners and their estates are drawn into the proceeding and are subject to the jurisdiction of the court; and when all the conditions and requirements of the Bankruptcy Act have been observed by them, jointly and severally, there is no sound reason why the court should not, upon their application in the same proceeding, discharge them from further liability for the partnership debts.''

The 1938 amendments to the bankruptcy law (§ 23(j), tit. 11, U.S.C.A. [§ 5, Bankr. Act]) changed the rule quoted above from L.R.A. 1915F, page 669, as to the effect on individual partners' liability of a discharge of the partnership, by providing that ''The discharge of a partnership shall not discharge the individual general partners thereof from the partnership debts. A general partner adjudged a bankrupt either in a joint or separate proceeding may, pursuant to the provisions of this title, obtain a discharge from both his partnership and individual debts.'' Assuming for the purposes of this opinion, but not holding, that the amendment just quoted is of jurisdictional significance as limiting or defining the power of the bankruptcy court in the premises, we give consideration to its applicability.

As to the applicability of the 1938 amendments to the present controversy it is to be recognized that normally where any provision relating to discharge is amended, the right to discharge will be governed by the law as it stands at the time the petition for discharge is filed or the court acts on it (*Farmers' Sav. Bank of Grimes, Iowa* v. *Allen*, (1930, 8 Cir.) 41 F.2d 208, 210; *In re Farrow*, (1939, D.C., Cal.) 28 F.Supp. 9, 10) but it is also to be noted that in enacting the 1938 bankruptcy legislation Congress prescribed a conditional saving clause as to pending proceedings, making applicability of the new law to such proceedings dependent on *practicability*. The clause is as follows (§ 6b, 52 Stat. 940, see annotation to § 1, tit. 11, U.S.C.A., 1941 Cumulative Annual Pocket Part, p. 14): ''Except as otherwise provided in this amendatory Act, the provisions of this amendatory Act shall govern proceedings *so far as practicable* in cases pending when it takes effect; but proceedings in cases then pending to which the

provisions of this amendatory Act are not applicable shall be disposed of conformably to the provisions of said Act approved July 1, 1898, and the Acts amendatory thereof and supplementary thereto.'' It also must be remembered that the Bankruptcy Act is to be interpreted and administered liberally in favor of the bankrupt (*Morris Plan Bank of Richmond, Va.* v. *Henderson,* (1932, D.C., N.C.) 57 F.2d 326, 327; *Farmers' Sav. Bank of Grimes, Iowa* v. *Allen, supra,* (1930, 8 Cir.) 41 F.2d 208, 212).

From what has been said as to the law prior to the effective date of the 1938 amendments to the Bankruptcy Act (September 22, 1938) it clearly appears that at the time the initially pertinent proceeding (the petition to marshal assets of the defendants) was filed (April 4, 1938) and likewise at the time (June 28, 1938) of the making of the offer to compromise the controversy represented or precipitated by such petition, the bankruptcy court had jurisdiction and authority to discharge these defendants from liability for the partnership debts without the necessity of their being adjudicated bankrupt and if the local bankruptcy courts were following the rule stated in the note on page 669 of L.R.A. 1915F, above quoted, the discharge of the firm during that period would have impliedly and effectively discharged these defendants from liability for firm debts. Again we state that we are not holding that the L.R.A. 1915F rule was the only holding the bankruptcy court could have made. We are cognizant of such decisions as *First Nat. Bank of Herkimer* v. *Poland Union,* (1940, 2 Cir.) 109 F.2d 54, wherein it is asserted in effect (p. 57) that the weight of authority denies discharge to an unadjudicated partner even though his assets may be seized by the firm trustee. The only proposition which we are concerned in depicting is that indubitably the bankruptcy court had jurisdiction, whether properly or erroneously, to release or discharge individual partners from firm debts without the formality of adjudication of the partners.

At the time the petition to marshal assets was filed and at the time of the compromise offer, section 27 of the Bankruptcy Act (§ 50, tit. 11, U.S.C.A.) provided that ''The trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interests of the estate.'' No material change was made in this section of the act in

1938. In reliance upon this section and apparently in the light of the law as it existed at the time the petition to marshal assets was filed and likewise as it stood at the time the compromise offer was made, the trustee on January 30, 1939, filed his petition to compromise the controversy. Such petition is entitled "In the District Court of the United States," and is denominated "Petition to Compromise Controversy." It alleges the appointment and qualification of the trustee, the filing of the petition to marshal the assets of the individual partners, including defendants, the issuance of the several orders to show cause, the discussion between counsel for the parties, of the matters involved; that "the assets of said persons [defendants] were disclosed, and the personal liabilities of said persons were likewise made known; that from the information received by your petitioner it appears that the value of the assets of said persons after the liquidation of the personal liabilities of said persons would amount to practically nothing." It is further averred in such petition to compromise that "your petitioner recommended that if the sum of $7500.00 was paid over to the Trustee herein in full and complete settlement, release, and discharge of the individual liability of said Frank E. Raiter and Louis G. O'Leari to the creditors of the above entitled bankrupt, your petitioner would present·to the court a petition *based thereon* to compromise the controversy; . . . that your petitioner is informed and believes, and therefore alleges, that said sum is being advanced by said [a] bank for and on behalf of said Frank E. Raiter and Louis G. O'Leari." A further allegation is that "a basis of compromise has been arrived at between [*sic*] all of the parties to the litigation hereinabove set forth." As grounds for the compromise and indicative of the character of the controversy which existed, it is alleged "That your Trustee believes it is for the best interests of the creditors of this estate that the compromise herein be approved for the reason that it is doubtful that the estate herein can realize any greater sum than that which is being paid by the said Frank E. Raiter and Louis G. O'Leari from any order that may be made directing them to turn over their assets to the Trustee herein to marshal the same. There is also some doubt as to the ability of your Trustee to prevail in the said proceeding to marshal the assets of the said Frank E. Raiter and Louis G. O'Leari. That the acceptance of the compromise at this time will eliminate costly

and long drawn out litigation and will redound for the benefit of the creditors of this estate.''

The allegations of the petition for compromise so far as recited up to this point are consistent with the object of the offer which was made by defendants—their complete release or discharge from firm debts—but unfortunately it contains another allegation which is inconsistent with the general plan and which is dwelt upon strongly by the plaintiff. Such allegation is that ''Said controversy *may* be compromised upon the following basis, to-wit:

''That in consideration of an order being made and entered herein, wherein and whereby Frank E. Raiter and Louis G. O'Leari are fully and completely released and discharged of and from any and all individual liabilities to each and every one of the creditors *who have filed claims* in the above entitled bankruptcy proceedings, being the Elba Oil Company, a co-partnership, the said Frank E. Raiter and Louis G. O'Leari will, through the Monterey County Trust & Savings Bank, pay to the Trustee herein the sum of $7500.00.''

Following the same inconsistency the prayer of the petition, in addition to asking that notice be sent to creditors and that an order be made authorizing the compromise, requests ''an order made and entered herein fully and completely releasing and discharging the said Frank E. Raiter and Louis G. O'Leari of and from any and all individual liabilities to each and every one of the creditors *who have filed claims* in the above entitled bankrupt estate.'' Plaintiff's claim, although duly scheduled by the bankrupt partnership, was not filed or proved by plaintiff or his assignor, and at the date the petition for compromise was filed (Jan. 30, 1939) the time for filing creditors' claims had expired (§ 93(n), tit. 11, U.S.C.A.). The stipulation of facts shows ''that said petition for compromise was duly and regularly set down for hearing . . . and due notice of said hearing was mailed and given to all creditors of said Elba Oil Company, including'' plaintiff's assignor.

Upon the above described petition the matter came on regularly for hearing in the bankruptcy court and the referee properly took cognizance of the actual terms of the compromise offer. Apparently the inconsistencies in the petition were ignored, as no amendment thereto appears to have been made, and an order was made which includes the following

explicit language: "Now, therefore, IT IS HEREBY OR-
DERED that said compromise is approved and confirmed, and
the Trustee is authorized and directed to compromise said
controversy by accepting the sum of $7500.00, paid to said
Trustee for and on behalf of Frank E. Raiter and Louis G.
Oleari, upon condition that said Frank E. Raiter and Louis
G. Oleari are released from *any and all liability* which may
or might exist against them or either of them as general part-
ners of the above-named bankrupt.

"IT I*F* FURTHER ORDERED that upon receipt of said
sum of $7500.00 by the Trustee that the said Frank G. Raiter
and Louis G. Oleari, and each of them are *fully and com-
pletely released and discharged from any and all claims, de-
mands, liability, causes of action or judgments against them
or either of them, as general partners* of the above-named
bankrupt."

The agreed statement of facts further establishes that no
appeal was taken and that the order above quoted from has
become final; that the $7,500 was accepted by the trustee and
expended pursuant to the order; and that the partnership was
discharged in bankruptcy. The discharge recites that the
"Elba Oil Company, a copartnership, composed of . . . Joseph
E. Barrett, J. S. Lees, Louis O'Leari and F. E. Raiter . . . had
been duly adjudged a bankrupt, under the Acts of Congress
relating to bankruptcy, and appears to have conformed to all
the requirements of law in that behalf."

█ Probably inspired by the use of the term "composition of
creditors" in the compromise offer of June 28, 1938, there
has been some argument between the opposing parties on this
appeal as to whether the proceeding to marshal assets of
the defendants and the compromise proceeding based thereon,
were not in law what they appear to be but, combined with
the offer, together constituted either a never-properly-insti-
tuted attempt at a composition of creditors under the then-
existing sections 12 and 74 (§§ 30 and 202, tit. 11, U.S.C.A.)
of the Bankruptcy Act (sections now recast and incorporated
as far as pertinent here in chapter 11, title 11, U.S.C.A.
[§§ 301-399, Bankr. Act], dealing with arrangements) or a
prematurely commenced or inept effort to achieve an "ar-
rangement" pursuant to the provisions of chapter 11, title 11,
U.S.C.A. (see, particularly, §§ 721, *et seq.*, tit. 11, U.S.C.A.
[§§ 321, *et seq.*, Bankr. Act]) as amended in 1938. A reading

of the sections above cited makes it apparent that the proceedings here involved were not designed to, and did not, constitute either a composition or an arrangement. Certainly under the law prior to the 1938 amendments the defendants *could* have filed composition proceedings (§ 202, tit. 11, U.S.C.A. [§ 74, Bankr. Act]) and would have been entitled to conclude them under *that law* (§ 799(3), tit. 11, U.S.C.A. [§ 399(3), Bankr. Act]) and likewise, subsequent to the effective date of the 1938 legislation, the defendants could have filed a petition for an arrangement pursuant to the provisions of section 721, title 11, U.S.C.A. (§ 321, Bankr. Act). But the defendants did not elect to institute any such proceedings. Jurisdictionally, they were not required so to do. Whether it would have been better practice for them to have pursued one of those courses we need not speculate. The fact is that they were placed in the position of defendants in an adversary proceeding—the petition to marshal their assets in the partnership bankruptcy administration—and they offered a settlement by way of compromise, upon terms which the bankruptcy court had jurisdiction to entertain.

So far as due process of law is concerned, it does not appear that plaintiff has been deprived of any right by any misapprehension that the compromise proceeding was in fact a composition or arrangement proceeding. Its character as a compromise proceeding is apparent upon mere inspection of the petition; the petition is that of the trustee, not that of the defendants or of the bankrupt firm; the substance of the petition obviously seeks compromise and does not purport to set forth the allegations specifically required by the Bankruptcy Act to be contained in a petition for composition or arrangement. (See sections cited *supra* in reference to "composition" and "arrangement.") Furthermore, in the agreed statement of facts plaintiff stipulates "that on or about the 28th day of June, 1938, defendants . . . made unto said Trustee, and through said Trustee to the creditors of said bankrupt, *an offer of compromise and composition,* the terms of which are set forth in Exhibit '4' . . .; that thereafter . . . said Trustee filed in said Court and matter his *petition to compromise the controversy* between said Trustee and said defendants. . . ."

At the date when the petition to compromise was filed, and likewise when it was acted upon, section 50, title 11, U.S.C.A.

(§ 27, Bankr. Act), previously herein quoted in its pre-1938 form and which as mentioned above was not amended in 1938 in any respect material to our consideration, declared that "The receiver or trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interest of the estate." Under this section the bankruptcy court had power to dispose of claims or assets of the bankrupt, of doubtful value, in an expeditious manner, other than in the usual and ordinary manner prescribed by statute for marshaling the assets of a bankrupt estate (*Scott* v. *Jones*, (1941, 10 Cir.) 118 F.2d 30, 31). In *Hamilton-Brown Shoe Co. et al.* v. *Ben L. Berwald Shoe Co.*, (1925, 5 Cir.) 10 F.2d 275, there was a factual situation very similar to that which was before the bankruptcy court here. It differed to the extent that in the cited case the suing creditors claimed personal liability on the part of the defendants not only on account of unpaid stock subscriptions, which could have been recovered in the bankruptcy administration by the trustee, the same as the personal liabilities of defendants as partners could have been enforced by the trustee here, but also in the cited case there was a claim against the defendants arising out of their activities as officers of a bankrupt corporation. The liability of the defendants in that case as officers of the corporation was personal to certain creditors and could not have been enforced by the trustee in bankruptcy. The bankruptcy court therefore did not have power to release what it did not have jurisdiction over but insofar as the facts before it were similar to our case, the Circuit Court of Appeals said (p. 276): "It may be conceded that the trustee may, with the approval of the court, compromise any controversy concerning the bankrupt estate, and for this *he represents all of the creditors* under the law. Such would be his claim for the unpaid portions of the stock subscriptions and his right of action to set aside a preference. (Bankruptcy Act, Sec. 27 [Comp. St., Sec. 9611].) The proceedings in this case to that extent are regular, and would be binding on appellants, if that were all."

■ The plaintiff's assignor was a scheduled creditor. Notice of the compromise proceeding was given as required by section 94, subdivision a, (3) and (6), title 11, U.S.C.A. (§ 58, subd. a, (3), (6), Bankr. Act.) Such assignor had a right to appear and contest the proceeding even though no claim had been

filed and the time for filing claims had expired. Furthermore the offer of compromise was made before the time for filing claims had expired. It was made to the trustee, who, as stated in the above quotation from *Hamilton-Brown Shoe Co. et al. v. Ben L. Berwald Shoe Co.*, represented *all of the creditors.* Such offer clearly stated the conditions on which it was made. The trustee could not alter those conditions and, as also held in substance in the case last cited, at page 276 thereof, the offer had to be accepted in substantial compliance with those conditions or not at all. The petition to compromise was at worst only ambiguous. It contained the statement that the trustee "recommended that if the sum of $7500.00 was paid over to the Trustee herein in full and complete settlement, release, and discharge of the individual liability of said Frank E. Raiter and Louis G. O'Leari *to the creditors of the above entitled bankrupt,* your petitioner would present to the court a petition *based thereon* to compromise the controversy." In our own state courts it is established that an order is not void on its face although it is not in accordance with the petition on which it is based. (*In re Morehouse,* (1917) 176 Cal. 634, 636 [169 P. 365] ; *Estate of Gardiner,* (1941) 45 Cal.App.2d 559, 564 [114 P.2d 643].) Even if the question here is not settled for us by the fact that the bankruptcy court determined its own jurisdiction we must hold that the petition was jurisdictionally adequate.

 In connection with the attack on the compromise proceedings, it is asserted that the trustee was entitled as of course to compel the defendants to marshal their assets, and on that premise plaintiff contends that there was no controversy to compromise. Such contention is devoid of merit; substantially every fact disclosed in connection with the proceeding to marshal assets and to compromise the same belies it. The mere fact that the trustee had the right as of course to maintain the proceeding did not make the fact or amount of net recovery for the partnership estate any less controversial. The trial court in bankruptcy (the referee) had the right to consider the uncertainty and cost of litigation in determining the advisability of compromise (*Petition of Stuart,* (1921, 6 Cir.) 272 F. 938, 941) and it also had the right to determine the sufficiency of the petition upon which it acted (*In re L.M. Axle Co.,* (1925, 6 Cir.) 3 F.2d 581, 582).

 It is regrettable that the trustee in preparing the peti-

tion to compromise permitted the ambiguities, which have been noted above, to appear. But those ambiguities did not deprive the court of its jurisdiction to proceed. Not only did the plaintiff's assignor have notice of the meeting of creditors and of the court hearing on the petition to compromise, but also it must be presumed that the law took its regular course and was complied with, i.e., that there was a final meeting of creditors before the discharge of the bankrupt partnership and that in compliance with subdivisions (13) and (14) of subsection (a) of section 75, title 11, U.S.C.A. (§ 47, Bankr. Act) the trustee did "make final reports and file final accounts with the courts fifteen days before the days fixed for the final meeting of the creditors; and (14) lay before the final meetings of the creditors detailed statements of the administration of the estates." Another duty of trustees, prescribed by section 75a(10) is to "furnish such information concerning the estates of which they are trustees and their administration as may be requested by parties in interest." We are satisfied that there was due process of law in the compromise proceeding and that plaintiff is bound thereby.

Regardless of the form of the mesne proceedings in the bankruptcy court, or of irregularities or errors therein, the controlling fact is that that court had jurisdiction over the subject matter and the parties before it. It had jurisdiction over the partnership as an entity, over its estate, over these defendants as partners and as individuals, over their individual estates, and over all of the scheduled creditors of the partnership. Its jurisdiction included the power to compromise any controversy among the parties before it and to discharge the defendants from liability to the creditors of the bankrupt firm.

█ The proceeding to marshal assets was instituted and the compromise offer was made prior to the effective date of the 1938 amendments. The law as it then existed was as much a part of that offer as though it had been written therein. (6 Cal.Jur. 310, § 186; *Brown* v. *Ferdon,* (1936) 5 Cal.2d 226, 231 [54 P.2d 712] ; *Wing* v. *Forest Lawn Cem. Assn.,* (1940) 15 Cal.2d 472, 476 [101 P.2d 1099, 130 A.L.R. 120].) The compromise offer involved substantive rights (see *Brown* v. *Ferdon, supra*), not mere matters of remedy or procedure. Not only were the defendants' interests concerned, but so

also were the interests of the bank which advanced the $7,500 and the interests of the individual creditors of defendants.

The offer of compromise, it will be recalled, specified the conditions on which the tendered money could be used and explicitly reserved title in the bank pending fulfillment of those conditions. It concluded "Until and unless said composition shall be so effected, completed, and confirmation thereof obtained, said sum of $7500.00 shall be and remain the property of the undersigned." If we were to hold that the subsequent amendments of 1938 deprived the court of jurisdiction to approve the compromise offer on the terms upon which it was made we would in effect convict the trustee of converting the money paid to him, the referee of authorizing and directing such conversion, and the district court judge of ratifying and approving such conversion. We think such an application of the amendments would give them an impracticable effect and that it would have been impracticable for the bankruptcy referee or judge to have so applied them to the proceedings here involved. Such proceedings therefore (upon the assumed hypothesis) constituted a proper case for actuation of the conditional saving clause of the amendatory act hereinabove quoted. It is obvious, of course, that if application of the 1938 amendments to the proceedings concerned would not deprive the bankruptcy court of its power to release or discharge the defendants then, notwithstanding applicability of the amendments, the questioned orders would still remain valid.

Our state courts give full faith and credit to the final judgments and orders of the United States District Courts (Code Civ. Proc., § 1908; *Bank of America* v. *McLaughlin etc. Co.*, (1940) 40 Cal.App.2d 620, 626-627 [105 P.2d 607]), and "where the judgment or decree of the Federal Court determines a right under a Federal statute, that decision 'is final until reversed in an appellate court or modified or set aside in the court of its rendition'." (*Stoll* v. *Gottlieb*, (1938) 305 U.S. 165, 170 [59 S.Ct. 134, 83 L.Ed. 104, 108].) Further establishing the conclusiveness of the bankruptcy proceedings on plaintiff in this state court action, we find in an opinion delivered for the Supreme Court by Mr. Chief Justice Hughes, the following statement of the law: "Apparently no question of validity was raised and the cause proceeded to decree on the assumption by all parties and the court itself that the

statute was valid. There was no attempt to review the decree. If the general principles governing the defense of res judicata are applicable, these bondholders, having the opportunity to raise the question of invalidity, were not the less bound by the decree because they failed to raise it. . . .

"The argument is pressed that the District Court was sitting as a court of bankruptcy, with the limited jurisdiction conferred by statute, and that, as the statute was later declared to be invalid, the District Court was without jurisdiction to entertain the proceeding and hence its decree is open to collateral attack. We think the argument untenable. The lower federal courts are all courts of limited jurisdiction, that is, with only the jurisdiction which Congress has prescribed. But none the less they are courts with authority, when parties are brought before them in accordance with the requirements of due process, to determine whether or not they have jurisdiction to entertain the cause and for this purpose to construe and apply the statute under which they are asked to act. Their determinations of such questions, while open to direct review, may not be assailed collaterally." (*Chicot County Drainage District* v. *Baxter State Bank*, (1939) 308 U.S. 371, 376 [60 S.Ct. 317, 84 L.Ed. 329, 333] ; see, also, *Bank of America* v. *McLaughlin etc. Co., supra*, (1940) at p. 627.) By express definition in the bankruptcy act the word "court" "shall mean the judge or the referee of the court of bankruptcy in which the proceedings are pending." (§ 1(9), tit. 11, U.S.C.A.)

■ Jurisdiction is but the power to hear and determine and does not depend upon the correctness of the decision made. (*Gray* v. *Hall*, (1928) 203 Cal. 306, 315 [265 P. 246].)

■ If a judgment ordered without a trial cannot be attacked collaterally, as has been held (*Ex parte Bennett*, (1872) 44 Cal. 84, 87; *Johnston* v. *San Francisco Sav. Union*, (1888) 75 Cal. 134, 139 [16 P. 753, 7 Am.St.Rep. 129] ; *Holland* v. *Superior Court*, (1932) 121 Cal.App. 523, 531 [9 P.2d 531]), then certainly the order of the bankruptcy court, made upon the proceedings hereinabove related, is not open to collateral question. There has been no suggestion of extrinsic (or other) fraud at any stage in the proceedings.

From what has been said the conclusion is reached that plaintiff here is making a collateral attack on a final order and judgment which the United States District Court had jurisdiction to make. Such attack fails.

It is also to be noted that the release of these defendants depends not alone on the referee's order of February 14, 1939, and its implied approval by the district judge in making the order discharging the bankrupt firm and closing the bankruptcy administration. The conclusion has been hereinabove developed that because of impracticability under the facts the 1938 amendments relating to the discharge of unadjudicated partners did not apply to this case; at least it would have been impracticable for the bankruptcy court to have applied such amendments in this case if the application thereof would have precluded consummation of the compromise according to the terms of the offer made prior to the effective date of such amendments. Upon the same reasoning, if we were to conclude that the compromise order of the referee was not in itself adequate to release the defendants from liability for the firm debts we should still be bound, for the preservation of practicability of application, to conclude that the discharge of the partnership should be entitled to the effect it could have had before those amendments were enacted. As we have shown, there was then respectable authority for holding that discharge of a partnership had the effect of discharging the partners from individual liability for the discharged firm's debts. Therefore, even if there were otherwise some question as to the efficacy of the order of compromise in releasing these defendants from the partnership debts, the doubt would be removed by the proper (in the premises) effect given to the discharge of the firm. Certainly the United States District Court judge must be presumed to have concluded either that the referee's order was final and conclusive as to plaintiff's rights in the premises against these defendants or that his own order of discharge of the partnership in bankruptcy operated to discharge these defendants, as otherwise he would have been approving a conversion of the $7,500 belonging to the bank which made the compromise offer for defendants and would have been closing the partnership bankruptcy administration with no determination of the proceeding to marshal defendants' assets.

Perhaps upon appeal, or other form of review in the federal courts, it might have been held that the referee's order of compromise and release was erroneous and that discharge of the bankrupt firm did not operate to discharge these defendants individually, but the state court is not a court of review for proceedings in the federal bankruptcy court. It

appears irrefragably from the agreed statement of facts and the considerations stated above that the federal court construed its proceedings in the premises as efficacious to release or discharge the defendants from all liability for partnership debts. For us to confute those proceedings by holding that the federal court's orders are void as between plaintiff and defendants here would be tantamount to reviewing and reversing those orders.

The judgment is affirmed.

Gibson, C. J., Shenk, J., and Curtis, J., concurred.

TRAYNOR, J.—I dissent.

The opinion of the District Court of Appeal in this case by Presiding Justice Peters, modified in part, sets forth the reasons that lead me to conclude that the judgment should be reversed:

"Where a partnership has been adjudicated a bankrupt the individual assets of the general partners may be drawn into the administration of the bankrupt estate, and any surplus remaining after paying individual creditors is applicable to the partnership debts. (Section 5g of the Bankruptcy Act, 11 U.S.C.A., § 23g; *Francis* v. *McNeal*, 228 U.S. 695 [33 S.Ct. 701, 57 L.Ed. 1029, L.R.A. 1915E, 706]; 6 Remington on Bankruptcy (4th Ed.), p. 499, 505.)"

"The 1938 amendment added to section 5 of the Bankruptcy Act, paragraph j, reads as follows: 'The discharge of a partnership shall not discharge the individual general partners thereof from the partnership debts.' (11 U.S.C.A., § 23j.) The amendatory act contained the following provision: 'Except as otherwise provided in this amendatory Act, the provisions of this amendatory Act shall govern proceedings so far as practicable in cases pending when it takes effect.' (52 Stats., p. 940; see, *In re Wm. Akers, Jr. Co., Inc.*, 31 F.Supp. 900.) In view of this provision section 5j (11 U.S.C.A., §23j) governs the interpretation of the discharge herein.

"Prior to the enactment of section 5j there was some doubt as to whether a discharge of the partnership only had the effect of discharging the individual liability of the partners for the partnership debts. (*Myers* v. *International Trust Co., supra* [273 U.S. 380, 47 S.Ct. 372, 71 L.Ed. 692]; 7 Remington on Bankruptcy, (5th Ed.) p. 863; 8 C.J.S. 1546, § 580; 37 Harv.L.Rev. 614.) The 1938 provision removed this doubt."

"The Act, prior to the 1938 amendment, provided only two methods whereby a bankrupt could secure a discharge— the discharge granted following full administration in bankruptcy, and a discharge upon confirmation of a composition of creditors. (*Welles-Kahn Co.* v. *Klein, supra.*) Under the 1938 amendment a discharge may be secured upon confirmation of an arrangement. The right of a partner to secure a discharge from individual liability to partnership creditors where the bankrupt is a partnership is similarly limited. The individual assets of a partner may be drawn into the bankruptcy administration. The Act makes no provision whereby one whose assets are subject to the jurisdiction of the court in a bankruptcy proceeding may secure a discharge from liability to creditors of the bankrupt in any other way. (See *In re Northampton Portland Cement Co.*, 185 F.542.)"

In the present case, the alleged discharge of the liability of the partners for partnership debts did not follow from full administration in bankruptcy. The majority opinion concludes, however, that although there was no composition or arrangement plaintiff was bound by the referee's order discharging defendants from liability for partnership debts. At the date of the order the bankruptcy act provided: "The receiver or trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interest of the estate." (11 U.S.C.A., § 50.) Even if it be assumed that the alleged dispute as to whether or not liquidation of the individual assets of defendants would yield any surplus for partnership creditors could be made the subject of a "compromise of controversy" under this section, the bankruptcy court had no jurisdiction to discharge the individual liability of the partners to partnership creditors in proceedings brought to compromise a controversy arising in the administration of the estate of the bankrupt partnership. (*Hamilton-Brown Shoe Co.* v. *Ben L. Berwald Shoe Co.*, 10 F.2d 275.) The power of the trustee of a bankrupt partnership to seize and administer the assets of the individual partners does not give the trustee power to control the claims of creditors against the partners individually. The creditor's right to an in personam judgment against the partner is not the property of the partnership or a right that can be enforced by the partnership trustee. (*First Nat. Bank of Herkimer* v. *Poland Union*, 109F.2d 54.)

"We are of the view that the referee's order of February

20, 1939, by which he purported to discharge Raiter and Oleari from individual liability for partnership debts was void on its face for the reason that as an order confirming a composition under section 12 of the Bankruptcy Act it was required to be made by the judge, and could not validly be made by a referee.''

''In the case herein, while proceedings to bring the assets of the partners into the bankruptcy were pending, Raiter and Oleari offered $7,500 to be applied in part payment of the partnership creditors on condition that they be released and discharged in full from individual liability to such creditors. The plan was essentially one for a composition. A composition of creditors is a 'proceeding, voluntary on both sides, by which the debtor, of his own motion, offers to pay his creditors a certain percentage of their claims in exchange for a release from his liabilities.' (6 Am.Jur. 776, § 416.) The offer of composition may be of a lump sum, as in the case herein. (*In re Bickmore Shoe Co.*, 263 F. 926.)

''A composition when confirmed operates as a discharge in bankruptcy. 'The confirmation of a composition shall discharge the bankrupt from his debts, other than those agreed to be paid by the terms of the composition and those not affected by a discharge.' (11 U.S.C.A. 32(c), see cases cited p. 133, par. 631; for similar provision as to arrangements under the 1938 amendments see 11 U.S.C.A. § 771; *Myers* v. *International Trust Co.*, 273 U.S. 380 (47 S.Ct. 372, 71 L.Ed. 692).) Before confirmation of the composition is sought it is required that it be accepted in writing by a majority in number of all creditors whose claims have been allowed, which number must represent a majority in amount of claims. (11 U.S.C.A., § 30, § 202.) Since a composition when confirmed is binding on creditors who do not assent, it is settled that there must be strict compliance with the statutory requirements. (*In re Palmer*, 2 F.Supp. 275, 277; *In re Frear*, 120 F. 978; 8 C.J.S. 1689.)

''Prior to the 1938 amendments to the Bankruptcy Act, compositions were provided for by sections 12 and 74. (11 U.S.C.A., § 30, § 202.) Under the 1938 amendments these sections were superseded by provision for 'arrangements.' (52 Stats. 840, enacting clause and chap. XI at p. 905; 11 U.S.C.A., § 701, et seq.) The new procedure includes compositions in the term 'arrangements.' This is plain from the definition, as follows: ' ''Arrangement'' shall mean any plan of a debtor for the settlement, satisfaction, or extension

of the time of payment of his unsecured debts, upon any terms.' (11 U.S.C.A., § 706.) An arrangement is not required to be confirmed by the judge. Under the 1938 amendments referees are invested with jurisdiction, subject to review by the judge, to 'confirm or refuse to confirm arrangements or wage-earner plans, or set aside the confirmation of arrangement or wage-earner plans and reinstate the proceeding or cases.' (11 U.S.C.A., § 66; see, also, 11 U.S.C.A., §§ 761-772, providing for confirmation by the 'court,' but not requiring confirmation by the 'judge.')

"These sections are not applicable to this proceeding. The 1938 amendments expressly provide that sections 12, 73 and 74, as amended, 'shall continue in full force and effect with respect to proceedings pending under those sections upon the effective date of this amendatory Act.' (52 Stats. p. 916; 11 U.S.C.A., § 799(3).) The composition in the present case is referable to section 12. A composition under section 74 is initiated by the filing of a petition or answer in which the debtor states that he desires to effect a composition. Upon the judge's approving the petition the composition proceeding goes forward with a meeting of creditors and other formalities. (11 U.S.C.A., § 202.) Such procedure was not followed in the present case. A composition under section 12 originates in an 'offer of composition.' (11 U.S.C.A., § 30; *Nassau Sm. & Ref. Works* v. *Brightwood Bronze F. Co.,* 265 U.S. 269, 271 (44 S.Ct. 506, 68 L.Ed. 1013); *Myers* v. *International Trust Co.,* 273 U.S. 380 [47 S.Ct. 372, 71 L.Ed. 692]; 8 C.J.S. 1688.) The offer in the present case was made 'on or about June 28, 1938,' according to the agreed statement of facts. The 1938 amendments were approved on June 22, 1938, and by terms of the amendatory act went into effect three months later, that is, on September 22, 1938. (52 Stats., p. 940.)

"By virtue of the express provision of the amendatory act above referred to, section 12 was applicable to the pending proceeding herein involved. Section 12 provides that 'the judge shall confirm a composition.' (11 U.S.C.A., § 30; *In re Bloodworth-Stembridge Co.,* 178 F. 372; *In re Everick Art Corp.,* 39 F.2d 765, 768.) When the act uses the term 'court,' the referee may be included, but when the term 'judge' is used the referee is excluded. (*In re McMurray,* 8 F.Supp. 449; 8 C.J.S. 976, 978; 2 Remington on Bankruptcy (5th Ed.) 92.) Section 1 of the act provides: ' "Judge" shall mean a judge of a court of bankruptcy, not including

the referee.' (11 U.S.C.A., § 1, subd. 16; subd. 20 under the section as amended in 1938.)

"The judge's subsequent order of discharge does not operate as a release of the individual liability of the partners for the partnership debts. The discharge was of the partnership. It was provided therein that 'Elba Oil Company, a copartnership composed of Joseph E. Barrett, J. S. Lees, Louis Oleari and F. E. Raiter, be discharged from all debts and claims which are made provable by said Acts against its estate, and which existed on the 31st day of December, A. D. 1937, on which day the petition for adjudication was filed against it; excepting such debts as are by law excepted from the operation of a discharge in bankruptcy.' "

"There appear to be other defects in· the proceeding viewed as a composition, in addition to the absence of confirmation by the judge. Where the offer of composition is made by partners of a partnership adjudicated bankrupt it should not be made until after the schedule of individual assets and liabilities as well as of partnership assets is on file. (*In re Palmer*, 2 F.Supp. 275, 277.) This is because the creditors in determining whether it is to their advantage to assent to an offer of composition should have full information as to assets available to satisfy their claims. Any surplus of individual assets after paying individual debts may be used to pay partnership claims. In the present case the offer was made while proceedings to compel the partners to file their schedules were still pending and before individual schedules had been filed.

"The notice to creditors was of a petition praying for discharge of the liability of the partners Raiter and Oleari to creditors who had filed claims, whereas the order of the referee entered on the petition discharges them from any and all liability which might exist against either of them as partners.

"The bankruptcy papers included in the present record also show a failure to comply with the requirement that before confirmation is sought the composition must have been accepted in writing by a majority of the creditors. (11 U.S.C.A., § 30.) The apparent reason for these omissions will be discussed hereafter. It is not necessary to determine whether these irregularities singly or together would render the composition void as a discharge. It is clear that, where the act requires the judge to confirm a composition, confirmation by a referee, a subordinate official of the court, is of no

legal effect. Such confirmation is void on its face as to creditors who did not participate in the composition. The composition is binding, however, as a common law composition, on those who participated in it. (*In re Clarence A. Nachman Co.*, 6 F.2d 427; *Paris Medicine Co.* v. *Lusby*, 174 Ark. 749 (297 S.W. 1015); *Welles-Kahn Co.* v. *Klein*, 81 Fla. 524, 527 (88 So. 315); 8 C.J.S. 1688.)

"The fact that plaintiff's assignor had not filed a claim in the bankruptcy proceeding does not bar it or its assignor from attacking the void order of confirmation. The offer of composition was made on June 28, 1938. The adjudication took place on January 4, 1938. Hence, the offer of composition was made within six months' period following adjudication of bankruptcy, in which claims are required to be filed. (11 U.S.C.A., § 93n; 44 U.S. Stats. 666, amending § 57 of the Bankruptcy Act.) The claim of plaintiff's assignor was listed in the partnership schedules filed. An offer of composition should extend to all creditors whose claims are listed by the bankrupt. (8 C.J.S. 1689, 1692; 7 Rem. (4th Ed.) pp. 196, 238; 8 Collier on Bankruptcy (14th Ed.), pp. 959, 1237, 1238; *Nassau Smelting & Refining Works* v. *Brightwood Bronze F. Co.*, 265 U.S. 269 (44 S.Ct. 506, 68 L.Ed. 1013); *In re Adamson*, 83 F.2d 211.) Thus it has been held that where the bankrupt makes an offer of composition before the time to file claims has passed, creditors whose claims are scheduled by the bankrupt need not make proof of claims to share in the composition. (*Nassau Smelting & Refining Works, supra.*)

"It should be noted that the terms of the offer of composition here involved did not confine it to creditors who had filed claims, nor did the referee's order of approval so limit it. But the trustee's interpretation of the offer evidently was that payment should be made only to those who had proved claims, since he prayed in his petition that Raiter and Oleari be released from invidual liability to creditors who had filed claims. In any event, no payment was made to plaintiff's assignor, nor did it in any way participate in the composition proceedings. In the circumstances the void order of confirmation did not operate as to it to discharge the individual liability of the general partners Raiter and Oleari.

"It appears that the failure to follow the procedure prescribed for a composition was due to the fact that the matter was handled as a 'compromise of controversy.' The act provides: 'The receiver or trustee may, with the approval of

the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interest of the estate.' (11 U.S.C.A., § 50; 2 Remington on Bankruptcy (5th Ed.) p. 717; 8 C.J.S. 1032.) Since approval of the 'court,' rather than of the 'judge' is required, approval of a compromise may be given by the referee.

"But that which is as a matter of law a composition may not be accomplished without complying with the statutory requirements under the guise of being a compromise of controversy. 'This section (§ 27, 11 U.S.C.A., § 50) should not . be confused with section 12 on compositions. It is intended to supply a summary and inexpensive way of settling questions arising in the administration of bankrupt estates. It is most often used in connection with contests on claims filed against the estate, or the contested collections of claims due the estate. It cannot, of course, be resorted to where the matter in controversy is the right to a discharge.' (Gilbert's Collier on Bankruptcy (one vol., 4th Ed.); p. 570.)

"A 'compromise of controversy' implies a dispute to be settled. In the case herein the papers in the bankruptcy proceeding which have been made part of the record in the present case show a dispute as to whether certain persons who claimed to be limited partners were in fact general partners. But there is no intimation of any dispute as to the status of the four general partners, including Raiter and Oleari. The trustee's petitions described them as general partners and the stipulation of facts upon which the present action was heard so describes them.

"The petition to compromise recites that it is doubtful that the estate can realize from marshaling of the individual assets of Raiter and Oleari a greater sum than they offered to pay, that is, $7,500, and that 'there is also some doubt as to the ability of your Trustee to prevail in the said proceeding to marshal the assets of the said Frank E. Raiter and Louis G. Oleari.' However, as to general partners the authority of the trustee to marshal assets to the end of applying any surplus remaining after paying individual debts to partnership obligations exists as a matter of right, unless, perhaps, where it appears unlikely that any surplus above individual debts will result. It would seem, therefore, that on the record the only dispute which could exist was whether liquidation of the individual assets of Raiter and Oleari would yield any surplus for partnership creditors. In our view such a dispute may not be made the subject of a com-

promise of controversy which will result in discharge of general partners from individual liability to partnership creditors."

"To summarize—the court in bankruptcy was without jurisdiction to discharge the individual liability of Raiter and Oleari as general partners except following full administration in bankruptcy or upon composition proceedings which met the statutory requirements. The referee's order was void as a discharge of the individual liability of Raiter and Oleari. It was void as a composition of creditors under section 12 of the Act because it lacked confirmation by a judge. The provision for compromise of controversies does not authorize a discharge of the individual liability of a partner to partnership creditors."

Edmonds, J., and Carter, J., concurred.