**In the matter of UNITED TRACTORS, INC., Bankrupt.**

**Hugh A. MINER, Trustee in Bankruptcy, Plaintiff,**

**v.**

**Raymond F. MITCHELL, Defendant.**

**Bankruptcy No. 77–60285–B–SJ.
Civ. A. No. 81–6001–CV–SJ.**

United States Bankruptcy Court,
W. D. Missouri,
St. Joseph Division.

Nov. 13, 1981.

Hugh A. Miner, St. Joseph, Mo., for plaintiffs.

Ralph W. Hicks, St. Joseph, Mo., for defendant.

## FINAL JUDGMENT OF DISMISSAL OF PLAINTIFF'S COMPLAINT

DENNIS J. STEWART, Bankruptcy Judge.

### I

The plaintiff trustee in bankruptcy filed his complaint in this adversary action to require the defendant to turn over to him the sum of $8,021.56.

The matter was expedited to a speedy trial by this court. Thereafter, before written findings of fact and conclusions of law could be filed, the United States Court of Appeals for the Eighth Circuit handed down its decision in *In re Citizens Loan and Savings Co.*, 634 F.2d 1144 (8th Cir. 1980). In that case, it appeared to this court, the court of appeals held that, in order for the bankruptcy court to exercise summary jurisdiction, the existence of the prerequisites for summary jurisdiction must be clearly and unmistakably present.[1]

### II

Therefore, on January 12, 1981, this court entered its order finding itself to be without summary jurisdiction and transferring this action to the civil docket of the district court pursuant to Rule 915(b) of the Rules of Bankruptcy Procedure because it appeared that there was independent federal jurisdiction of the plaintiff's complaint. In the order transferring the action to the civil docket of the district court, this court made the following pertinent findings and observations:

"After the court had completed written findings of fact, conclusions of law and a final judgment, but before they could be typed and filed, the United States Court of Appeals for the Eighth Circuit handed down its decision in *In re Citizens Loan and Savings Company*, 634 F.2d 1144 (8th Cir. 1980), holding that it is improper for

---

1. Thus, in that case, it appeared that the summary jurisdiction of the bankruptcy court could be sustained with respect to at least a portion of the sums paid to the defendant, with respect to which he could not conceivably have mounted a claim of right. But, because he could claim some of the monies paid him, the court of appeals held that he must be regarded as having a substantial claim of right to all the *monies* paid him.

the bankruptcy court to exercise summary jurisdiction with respect to any claim if it can by any inference be said that there is lack of consent by an adverse claimant to any portion of that claim.

"In the face of that decision, it would be foolhardy for this court to proceed to decision, when any appeal would with seeming near certainty result in the reversal of the judgment on the grounds of the absence of summary jurisdiction. Although the answer of the defendant is admittedly vague on whether he consents or objects to the summary jurisdiction of the bankruptcy court, it seems better, in light of the above decision of the court of appeals and the hostility thereby evidenced against summary jurisdiction, to have this action tried and determined in a court of unquestionably competent jurisdiction.

"Under the facts which have been presented to this court, it appears that the district court is such a court. For the facts of this case show that the plaintiff trustee is attempting to recover a payment out of money by the bankrupt corporation to or for the benefit of the defendant within a year preceding the date of bankruptcy. It can thus be regarded as a claim, *inter alia*, for recovery under the provisions of § 67d(2)(a), which provides that:

> '[e]very transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent . . . as to creditors existing at the time, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent.'

"The district courts, further, are granted independent jurisdiction of actions brought under § 67 by the terms of § 23b

of the Bankruptcy Act. Additionally, it is conceivable that the district court may be able to hear the contract question or questions as a matter of pendent jurisdiction.

"It is with the greatest reluctance that this court exercises the duty to make the transfer under Rule 915(b), *supra*, particularly after it had processed the action to a hearing and a prepared decision. It is crippling to the work of the bankruptcy court to have to relinquish jurisdiction of every case in which there may, by any inference or reason, be some doubt as to the existence of summary jurisdiction. But that appears to be the rule of *In re Citizens Loan and Savings Company, supra*. It is surprising that decisions continue to be made on the basis of the summary jurisdiction issue when one of the primary reasons for the change in the new Bankruptcy Code in this regard was that the former law was so signally promotive of injustice and needless waste of time in focusing on the distinction between summary and plenary jurisdiction.

"If, in the light of the foregoing considerations, the district court remands the action to this court, then this court may proceed with some assurance of the soundness of its own jurisdiction. Until then, however, it cannot do so."

### III

■ The order thus entered finding the bankruptcy court to be without summary jurisdiction and transferring the action to the civil docket of the district court was in effect and substance a dismissal without prejudice from the bankruptcy court. As such, it was an appealable order. But no appeal was taken from the order.

This failure of either party to appeal from the order finding the bankruptcy court to be without summary jurisdiction now gives that finding *res judicata* effect.[2]

---

2. Thus, in *In re Sterling*, 125 F.2d 104 (9th Cir. 1942), it was held to be reversible error for the district court to hold, after the time for appeal had run out, that the referee in bankruptcy did not have jurisdiction. See also 1 Collier on Bankruptcy ¶ 2.05, p. 151, n. 4 (1978); *Mueller v. Elba Oil Co.*, 21 Cal.2d 188, 130 P.2d 961, 971 (1942) (which is also to the effect that "Jurisdiction is but the power to hear and determine and does not depend upon the correctness of

For it is fundamental that the bankruptcy court has jurisdiction to determine its own jurisdiction and that, once that determination is made, it may be challenged only by direct appeal and not collaterally. "Supreme Court decisions have now made it clear that the bankruptcy court has power in the first instance to determine whether it has jurisdiction to proceed. Moreover, any determination concerning its own jurisdiction, even though erroneous, is *res judicata* in a subsequent collateral proceeding. These principles apply even if the question of jurisdiction was not raised; and they apply to orders of the referee as well as to those of the judge." 1 Collier on Bankruptcy ¶ 2.05, p. 150 (1978). Thus, the district court, after the time for appeal had run out, had no jurisdiction to re-determine the jurisdiction and power of the bankruptcy court. Its jurisdiction to consider jurisdiction was limited, under the foregoing principles, to determining its own jurisdiction. There being no direct attack by appeal upon the bankruptcy court finding, the district court proceedings, as to bankruptcy court jurisdiction, can be regarded only as a collateral proceeding. This court's referring in its prior order to the possible future remand by the district court was predicated on the assumption that a timely appeal would be filed.

## IV

Nevertheless, by means of its order of May 13, 1981, the district court remanded this action to the bankruptcy court by means of a *sua sponte* collateral attack on the bankruptcy court's finding itself to be without summary jurisdiction. The order of remand contained the following considerations:

the decision made."). "It is now firmly settled that upon general reference the referee acts as a court of bankruptcy, except as to those matters which the Act or the Bankruptcy Rules reserve to the judge alone." 2A Collier on Bankruptcy ¶ 38.02, n. 18, pp. 1397–1398 (1978). And see *In re Hawks*, 471 F.2d 305, 307 (4th Cir. 1973) ("When the appellant failed to object to the Referee's Order . . . and when it failed within the ten days allowed by statute to petition for review of that order of the Referee sustaining the jurisdiction to entertain the wife's petition . . . , that order became final and

"A court of bankruptcy is without jurisdiction to adjudicate in a summary proceeding a controversy over property allegedly held adversely to the bankruptcy estate unless the adverse claimant consents or waives objection. See *Harrison v. Chamberlin*, 271 U.S. 191 [46 S.Ct. 467, 70 L.Ed. 897] (1926). The defendant may waive his objection to the summary jurisdiction of the bankruptcy court as provided in Rule 915 of the Rules of Bankruptcy Procedure:

> (a) . . . [A] party waives objection to jurisdiction of an adversary proceeding or a contested matter and thereby consents to such jurisdiction if he does not make objection by a timely motion or answer, whichever is first served.

"A review of the file of the proceedings in the bankruptcy court reveals no objection by either motion or answer. Mitchell's answer, which was filed on June 18, 1980, denies the substance of the trustee's complaint and asserts a claim for set-off against the plaintiff in the sum of $32,000 plus interest; it is silent as to jurisdiction.

"In its order of transfer, the bankruptcy court noted that Mitchell's answer prays for an order dismissing the complaint and stated that 'at most' defendant's prayer created some ambiguity whether jurisdiction was being objected to. This Court finds that the convention of pleading exercised by defendant raises no such ambiguity; the only stated ground for dismissal was 'failure to state a claim for which relief may be ordered.' There is no hint of an assertion of a lack of jurisdic-

no longer subject to appeal or collateral attack."); *Arizona Power Corp. v. Smith*, 119 F.2d 888, 890 (9th Cir. 1941); 2A Collier on Bankruptcy ¶ 39.29, pp. 1540.5, 1540.6 (1978) ("If an appeal of the referee's order is not taken, that order has the force and effect of an order of the district court and is *res judicata* as to the merits. The parties' right to complain of the order is effectively lost, except for possible reconsideration by the referee himself, and the order is *not subject to collateral attack in the district court.*" (Emphasis added.)).

tion. No case law support has been located for the proposition that the customary request for dismissal of defendant on grounds other than jurisdiction constitutes an objection to jurisdiction. The weight of authority certainly favors regarding an answer such as the one filed in this case as waiver or consent to summary proceedings in the bankruptcy court. See e. g., *In re J. S. Mobile Homes*, 434 F.2d 1294 (9th Cir. 1970); *Guardian Title Co. v. Sulmeyer*, 417 F.2d 1290 (9th Cir. 1969); *Finkelstein v. Keith Fabrics, Inc.*, 278 F.2d 635 (5th Cir. 1960); *Coffman v. Cobra Mfg. Co.*, 214 F.2d 489 (9th Cir. 1954), cert. denied, 348 U.S. 912 [75 S.Ct. 291, 99 L.Ed. 715] (1955); *In re Warren*, 387 F.Supp. 1395 (S.D.Ohio 1975).

"In this case defendant not only did not object to jurisdiction in his answer, he also asserted a counterclaim. In a controversy in which the Eighth Circuit Court of Appeals assumed that the bankruptcy court would otherwise have been without jurisdiction, the defendant's submission to that court of its claim to the property involved conveyed jurisdiction to determine all controversies in relation to the claim. *Floro Realty & Investment Co. v. Steem Electric Corp.*, 128 F.2d 338 (8th Cir. 1942). Defendant also, with 'apparent willingness,' presented his case on the merits to the bankruptcy court in September 1980.

"Moreover, defendant, who received notice that his failure to respond to this Court's show cause order would be construed to be consent to the jurisdiction of the bankruptcy court, has failed to respond. The facts of this case stand in stark contrast to the facts of *In re Citizens Loan and Savings Co. (Aylward v. Snooks)*, 634 F.2d 1144 (8th Cir. 1980). In the present case, defendant failed to object by answer or motion and defendant participated without objection in a hearing on the matter. Defendant Snooks, on the other hand, repeatedly asserted objections to the summary proceeding before and throughout the hearing."

V

In transferring this action to the district court which, it appears, almost certainly has independent federal jurisdiction,[3] this court had hoped that the twin goals of justice and efficiency might be served by litigation of this case on the merits in a forum where the specter of possible lack of jurisdiction of the trial court would not always lurk in the background.

But, now having been unable to accomplish that desirable result, this court must do what it can possibly do to ensure a decision on the merits of this action.

As stated above, however, this court disagrees that it can now take jurisdiction in the absence of a finding made by the district court on *direct appeal* reversing the former finding of this court. In the absence of such a reversal on *direct appeal,* the former finding of this court now has a *res judicata* effect currently and cannot be changed by this court.

Even if there could not be imagined to reside in this court some power *sua sponte* to alter or amend its former judgment (which there is not[4]), this court could not, on the facts and law before it, with good conscience disturb its prior finding that it is without summary jurisdiction.

The court is aware that it has been held in other cases that not every form of motion to dismiss is sufficient to constitute an objection to summary jurisdiction. An unequivocal narrow motion based on improper venue, for instance, is not regarded as sufficient to raise the summary jurisdiction issue.[5]

---

3. If the trustee acts appropriately, he may still avail himself of this jurisdiction. See note 7, *infra.*

4. If the court is *sua sponte* to alter or amend its prior judgment, it must do so within ten days.

11 Wright and Miller, Federal Practice and Procedure ¶ 28.13.

5. See, e.g., *Guardian Title Co., Inc. v. Sulmeyer,* 417 F.2d 1290 (9th Cir. 1969).

The court is also aware that the district court has, in remanding another adversary action to the bankruptcy court, held that a motion to dismiss for failure to state a claim cannot be regarded as the equivalent of a motion to dismiss for lack of summary jurisdiction. See *Aylward v. Garvey,* Civil Action No. 81–6009–CV–SJ (W.D.Mo. July 13, 1981). But it is all too plain that the request in this case is vastly more general and vague than that of a motion to dismiss for failure to state a claim. But, even if it were reduceable only to that status, this court finds itself in disagreement that a motion to dismiss for failure to state a claim does not comprehend also an objection to jurisdiction. For, at least since the decision of the Supreme Court of the United States on *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), it has been a fundamental of federal civil procedure that the issue of whether a claim is stated can be considered only *after,* and not *before,* a court determines whether it has jurisdiction. "Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy." It would therefore seem to this court that, quite contrary to the rule of *Aylward v. Garvey, supra,* a motion to dismiss for failure to state a claim necessarily forces a court to consider the issue of its own jurisdiction. It must therefore be regarded as sufficient to raise that issue.

■ Further, the filing of a counterclaim does not in every imaginable case constitute a consent to the exercise of summary bankruptcy court jurisdiction. See 2 Collier on Bankruptcy ¶ 23.08, pp. 557–558 (1976). In this action, when the counterclaim which is stated in the answer is, as noted above, coupled with a cognizable objection to summary jurisdiction, it would be error for the court to construe the counterclaim as an unequivocal consent to summary jurisdiction. For it thereby appears that the counterclaim was filed in the alternative to the objection to summary jurisdiction and was therefore to be entertained only if the objection to summary jurisdiction were denied.

## VI

Nevertheless, on the theory that the current holding of this court of absence of summary jurisdiction may be appealed, this court will make written findings based upon the hearing which was conducted before this court entered its order transferring this action to the district court under Rule 915(b), *supra.* In this manner, if the finding of this court as to jurisdiction is reversed on a proper direct appeal, then the merits can be reviewed, thus perhaps saving another remand.

## VII

*Findings of Fact and Conclusions of Law on Merits*

■ Before this court issued its order transferring this action to the civil docket of the district court, it had drafted the following findings of fact and conclusions of law which are now incorporated into this judgment:

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT DIRECTING THE DEFENDANT TO TURN OVER THE SUM OF $8,021.56 TO THE PLAINTIFF TRUSTEE IN BANKRUPTCY

"The plaintiff trustee in bankruptcy brings this action to recover from the defendant the sum of $8,021.56, an amount which the bankrupt corporation paid to the lienholder on a certain combine owned and possessed by the defendant and which was not repaid to the bankrupt corporation. The defendant denies liability, asserting that the $8,021.56 was paid to the lienholder in accordance with the terms of a contract which contemplated the purchase by defendant of a new 915 combine [6] from the

---

6. The retail instalment contract for agricultural equipment entered into by the defendant and

the bankrupt corporation on or about December 1, 1976, is for the purchase of a "915

bankrupt corporation which was never delivered by the bankrupt corporation, and thus, the contract was terminated by the breach of the bankrupt. Further, the defendant counterclaims for expenses which he alleges he was required to expend for repairs on the old combine during the period of time in which the bankrupt did not deliver the new combine.

## The Hearing

"On the issues thus joined by the pleadings, the court of bankruptcy conducted its hearing on September 22, 1980, in St. Joseph, Missouri. The plaintiff appeared personally and as his own counsel. The defendant appeared personally and by Ralph W. Hicks, Esquire, his counsel. On the basis of the admissible and credible evidence then adduced, the following findings of fact are made.

## Findings of Fact

"On December 1, 1976, the defendant and the bankrupt corporation entered into a written agreement whereby the defendant was to purchase the new combine from the bankrupt.[7] In respect of the type of combine which the bankrupt corporation was to deliver, the uncontradicted testimony demonstrates that a new combine could not readily be obtained by the bankrupt corporation from a wholesale distributor, but rather had to be obtained on a chance basis from another dealer; that, accordingly, the bankrupt corporation was to be given a reasonable opportunity to locate and purchase such a combine; and that the defend-

ant understood that the process of locating a combine might take some time. In fact, he understood, according to his own testimony, that the process might well require a great deal of time, when United Tractors, Inc., was not on friendly terms with the other retail dealers in the area.[8]

"As part of the agreement, and to induce the defendant to agree to purchase the 915 combine from it, the bankrupt corporation paid some $8,021.56 to the lienholder on the defendant's old combine.

"The bankrupt corporation however, was never able to deliver a 915 combine to the defendant. And, on October 27, 1977, the petition herein for an involuntary bankruptcy adjudication was filed, culminating in the adjudication of the corporation as a bankrupt on February 10, 1977.

"Meantime, the defendant, according to his testimony, was required to keep his old combine in service and to expend a total sum of $8,293.22 in upkeep and repairs,[9] which he seeks to recoup by means of his counterclaim in this action. This requested recoupment, he contends, is authorized by law because United Tractors breached the contract in the fall of 1977 in failing to produce the 915 combine before the harvest which was then scheduled. In support of this counterclaim, however, the defendant is able to point to no language, written or oral, nor any other basis upon which it might be found that the agreement should terminate in the fall of 1977 if the bankrupt corporation should not produce a 915 combine by then.[10]

combine desiel [sic] hydro 23.1x 26 12.4x16 cab heater and air axle extions [sic]" and an "883 corn head 8–R–N," for a total cash price of $54,408.00. There was to be a cash down payment of $645.00 and a trade in allowance of $24,263.00. It was in anticipation of receiving the combine of the defendant that United Tractors paid off the existing lien thereon.

7. See note 6, *supra.*

8. The testimony in the hearing conducted by this court was uncontradicted to this effect. By reason of its continually underselling other retailers, the bankrupt had achieved a widespread unpopularity with them.

9. The repairs were purportedly for parts which became defective during the period of waiting for the new combine to be located by the bankrupt. But it was contemplated by the parties that an indefinite period should be spent waiting to see whether the condition precedent to the contract should occur—the locating of an available 915 combine.

10. See note 6, *supra.* The defendant also admitted in his oral testimony that no deadline for production of the new 915 combine was discussed.

### Conclusions of Law

"These facts clearly evidence the right of the trustee in bankruptcy to recover the $8,021.56 paid to the defendant on at least two separate and independent grounds: (1) as a transfer made within the year next preceding the date of bankruptcy while the bankrupt was insolvent for inadequate consideration and which the trustee in bankruptcy may avoid as a fraudulent transfer under § 67d(2)(a) of the Bankruptcy Act or (2) as a payment which should be restored to the bankrupt's trustee in bankruptcy as one made on a contract which never came into existence because of the nonoccurrence of a condition precedent.

"First, under the provisions of § 67d(2)(a), *supra*,

'[e]very transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent . . . as to creditors existing at the time of such transfer, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent.'

"The facts found above and clearly reflected in the files and records in this case firmly establish all the elements in this section. The payment of the $8,021.56 was on December 1, 1976, which was within the year prior to the filing of the involuntary petition against the bankruptcy on October 27, 1977. Further the findings made by this court in adjudicating the bankrupt to have been insolvent as of June 29, 1977, show as well that the bankrupt was insolvent as of the time the transfer of the $8,021.56 was made on December 1, 1976. See *In re United Tractors, Inc.*, In Bankruptcy No. 77–60285–B–SJ (W.D.Mo.Bkrtcy. Feb. 10, 1977), affirmed, Civil Action No. 78–6021–

CV–SJ (W.D.Mo. May 29, 1979). In the findings then made, it was found that the bankrupt's assets, as of June 29, 1977, were $396,247.00 and its liabilities were $441,028.50. Subtracting the assets gained and liabilities incurred since the time of the transfer of the $8,021.56 shows the bankrupt to have been insolvent as of that time.[11] The evidence also shows that the bankrupt received no consideration for payment of the $8,021.56. Under the Bankruptcy Act, it is the actual value given which determines the adequacy of any consideration,[12] and, accordingly, the defendant's promise to turn over title and ownership of its combine to the bankrupt upon the occurrence of a future condition which never occurred can only be regarded as totally insufficient.[13] And, finally, the files and records in this case clearly demonstrate that there were creditors in existence at the time of the transfer, within the meaning of § 67d(2)(a), *supra*.[14] Therefore, the transfer is 'null and void against the trustee' within the meaning of § 67d(6) of the Bankruptcy Code.

"Second, a separate and independent ground for the recovery of the trustee is that the condition precedent contemplated by the parties to the contract never occurred. The evidence clearly and certainly shows that the parties contemplated that the bankrupt be able to obtain a 915 combine from another dealer in the vicinity before the defendant had a duty to purchase that combine or to trade in his old combine. The uncontradicted evidence further shows that that condition was contemplated to be uncertain, was accepted by both parties as an uncertainty, and that it never came to pass. Therefore, the contract never came into existence and the bankrupt's premature payment on account of it must accordingly be returned to its successor in interest, the trustee in bank-

---

11. According to the bankrupt's schedule of debts filed in this case on March 10, 1978, not over $30,000 of its indebtedness as reflected on the June 29, 1977, balance sheet was incurred subsequent to December 1976.

12. Thus, an unfulfilled promise cannot be regarded as sufficient consideration within the

meaning of § 67(d)(2)(a) of the Bankruptcy Act. See § 67(d)(1)(e) of the Bankruptcy Act.

13. See note 12, *supra*.

14. In fact, this involuntary case was initiated by petitioning creditors.

ruptcy. It is true that 'the law does not favor conditions precedent and courts will not construe contract provisions to be such unless required to do so by plain, unambiguous language or by necessary implication.' *Kansas City Southern Railway Company v. St. Louis-San Francisco Railway Company,* 509 S.W.2d 457, 460 (Mo.1974). But, in this case, the evidence clearly demonstrates that the $8,021.56 was paid to the defendant for the purpose of clearing a prior lien on his combine; that the defendant was nevertheless to deliver up the combine only if and when the bankrupt corporation was able to obtain a new 915 combine from a dealer in the area; and that no time limit was placed on the delivery of a new combine. These facts necessarily imply that performance was not expected unless and until the new 915 combine should be found available. 'A "condition precedent" is one that is to be performed before the agreement becomes effective, and which calls for the happening of some act after the terms of the contract have been agreed on, before the contract shall be binding on the parties.' Black's Law Dictionary, p. 366 (1968). See also and compare *Bommarito v. Southern Canning Co.,* 208 F.2d 56 (8th Cir. 1953). It was agreed, according to the evidence that the finding of an available 915 combine was a pre-condition to performance and, further, that, when there was no time limit on the attempts to find such a combine, the event may or may not happen in the future. Therefore, it must be concluded that, when the event did not happen, a binding contract did not come into existence. The money paid the defendant (or in his favor) on the assumption that the contract would come into existence should therefore be restored to the bankrupt's successor, his trustee in bankruptcy.

"The defendant's claim that he should be permitted to set off against the $8,021.56 the cost of the repairs which he made on his own combine while awaiting the possibility—not the certainty—that the contract

with the bankrupt should come into existence is therefore necessarily without merit. For, according to his own testimony in the trial of the action at bar, no time limit was contemplated for the bankrupt's obtaining a 915 combine to be purchased by him.[15]

"It is therefore, for the foregoing reasons,

"ORDERED AND ADJUDGED that the defendant turn over to the plaintiff the sum of $8,021.56."

### VIII

Now, however, this court may only exercise its jurisdiction to dismiss the action. Thus, it is left open to the trustee to appeal the dismissal and thereby obtain a decision on the merits. This must necessarily be so even if this court could consider the fact that the defendant did not respond to the district court's order directing it to show cause why the action should not be remanded to this court. Rather than an expression of unequivocal consent, the failure to respond only heightens and emphasizes the ambiguity which already existed.

### IX

All that is here done is in the good faith hope that this action can, in keeping with applicable jurisdictional principles, be determined, in the interest of justice, on its merits. If it were simply desired by this court to dispose and "get rid of" this action without suffering the ignominy of reversal on appeal, it could exercise its discretion to remit jurisdiction of this action to a court of concurrent jurisdiction, a discretion which may be exercised even if the bankruptcy court is to be deemed to have jurisdiction.[16] But the parties, or either of them, should be granted the opportunity to appeal the dismissal with the hope that review of the foregoing findings and conclusions might result in a decision on the merits if this court's finding of absence of summary jur-

---

**15.** See note 9, *supra.*

**16.** "(T)here is a limited discretion available to a bankruptcy court to require matters to be liti-

gated in state courts even where the jurisdiction exists in the bankruptcy court." *In re Axton,* 641 F.2d 1262, 1273 (9th Cir. 1981), and cases there cited.

isdiction is reversed on a *proper direct appeal* therefrom. For, to accept jurisdiction under these circumstances would be to accede to the principle that a bankruptcy court's finding as to its own jurisdiction may be reviewed any time after the time for taking an appeal has run out and summarily reversed. Any stability of the bankruptcy court's ruling and judgments would be undermined and its effectiveness as a court would pass out of existence.[17]

### X

It is therefore, in accordance with the foregoing principles,

ADJUDGED that this action be, and it is hereby, dismissed for lack of jurisdiction.[18]

---

17. To prevent this result is perhaps the reason for the provisions for unreviewable abstention in the new Bankruptcy Code. See § 305, Title 11, United States Code, and § 1471(d), Title 28, United States Code.

18. The order of the district court remanding this action to the bankruptcy court contained citations of several cases purporting to stand for the proposition that summary jurisdiction was held to be proper when "an answer such as the one filed in this case" was involved. A review of those cases demonstrates that not one is considered to have involved an answer requesting to be "discharged" from the complaint on file.